JUDGE KAPLAN

07 CV 3818

247-07/PJG

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

MAY 1 5 2007

Peter J. Gutowski (PG 2200)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
AMERICAS BULK TRANSPORT LTD.,

                    Plaintiff,                07 CV

                                            **VERIFIED COMPLAINT**

       - against -

LION SHIPHOLDINGS a/k/a LION
SHIPHOLDINGS LIBERIA,

                    Defendant.
-----------------------------------------------------------------x

        Plaintiff AMERICAS BULK TRANSPORT LTD. (hereinafter "ABT"), by its attorneys

Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant LION

SHIPHOLDINGS    a/k/a    LION    SHIPHOLDINGS    LIBERIA    (hereinafter    "LION

SHIPHOLDINGS"), alleges upon information and belief as follows:

        1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract.

The case also falls within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C.

§1333, and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal

jurisdiction also exists because the action arises under the New York Convention on the

Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the

Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.     At all times relevant hereto, Plaintiff ABT was and still is a foreign business entity duly organized and existing under the laws of a foreign country with a business address in Monrovia, Liberia.

3.     At all times relevant hereto, Defendant LION SHIPHOLDINGS was and still is a foreign business entity duly organized and existing under the laws of a foreign country with a place of business in care of Marvel International Management & Transportation Ltd., Yeni Sulun Sk. 11.Aralik, No:3, 34330-Levent, Istanbul, Turkey.

4.     Defendant LION SHIPHOLDINGS utilizes other entities, including but not limited to Euroteam Maritime SA, as paying or funding agent for purposes of receiving, holding and/or transferring funds which are the property of or in which the defendant LION SHIPHOLDINGS has an attachable interest.

5.     On or about December 7, 2006, Plaintiff ABT, as owner, and Defendant LION SHIPHOLDINGS, as charterer, entered into a maritime contract of charter party for the M/V BULK INTREPID, a true and correct copy of which is annexed hereto as Exhibit A (hereinafter the "charter party").

6.     Plaintiff ABT duly tendered the vessel into service under the charter party and the contract was performed.

7.     In breach of the charter, LION SHIPHOLDINGS failed to arrange for a full and complete discharge of cargo of clinker which was carried on the subject voyage, despite its obligation to do so under the terms of the charter party and pursuant to the representations conveyed by charterer LION SHIPHOLDINGS at the time of the discharge.

8.    As a consequence of the failure to remove the cargo, costs and expenses were incurred at the next load port to arrange for the removal of that excess cargo.

9.    By virtue of the foregoing, there is an outstanding balance due and owing to the plaintiff ABT from the defendant LION SHIPHOLDINGS in the sum of $109,219.47 as reflected in the hire statement dated April 2, 2007, a copy of which annexed hereto as Exhibit B.

10.    Despite due demand, the outstanding balance remains unpaid and outstanding under the charter party.

11.    This action is brought to obtain jurisdiction over Defendant LION SHIPHOLDINGS and to obtain security in favor of Plaintiff ABT in respect to ABT's claims against Defendant LION SHIPHOLDINGS under the charter party and in aid of arbitration and to compel the Defendant LION SHIPHOLDINGS to arbitrate.

12.    This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorney fees and costs in the arbitration proceedings and interest, all of which are recoverable as items of claim in the London arbitration.

13.    Plaintiff ABT estimates, as nearly as can be computed, that the attorney fees and costs to arbitrate the claim will be USD $45,000, and thus seeks an attachment in the total amount of $167,325.81.

14.    Upon information and belief, and after investigation, Defendant LION SHIPHOLDINGS cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit,

freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant LION SHIPHOLDINGS (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name, or as may be held, received or transferred for its benefit in the name of the paying and funding agent Euroteam Maritime SA at, moving through, or within the possession, custody or control of banking institutions including but not limited to JPMorgan Chase Bank, Citibank, American Express Bank, Bank of America, The Bank of New York, HSBC, HSBC USA Bank NA, BNP Paribas, Deutsche Bank, Deutsche Bank Trust Co. Americas, Wachovia Bank, ABN Amro, Atlantic Bank of New York, Standard Chartered Bank, Bank of China, New York, Bank of India and/or other institutions or such other garnishees who may be served with a copy of the process of Attachment issued herein.

WHEREFORE, Plaintiff ABT prays:

a.   That process in due form of law according to the practice of this Court issue against Defendant LION SHIPHOLDINGS;

b.   That if Defendant LION SHIPHOLDINGS cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant LION SHIPHOLDINGS, up to and including the claim of **$167,325.81** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant LION SHIPHOLDINGS (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its own name or as may be held, received or transferred for its benefit in the name of its paying or

funding agent Euroteam Maritime SA at, moving through, or within the possession, custody or control of banking institutions including but not limited to JPMorgan Chase Bank, Citibank, American Express Bank, Bank of America, The Bank of New York, HSBC, HSBC USA Bank NA, BNP Paribas, Deutsche Bank, Deutsche Bank Trust Co. Americas, Wachovia Bank, ABN Amro, Atlantic Bank of New York, Standard Chartered Bank, Bank of China, and Bank of India and/or other garnishee(s) which may subsequently be identified and upon whom a copy of the Process of Maritime Attachment and Garnishment issued herein may be served;

c.      That an Order be entered directing Defendant to proceed to arbitration for the adjudication of the merits of the claim;

d.      That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to and enforce any arbitration award that may be rendered; and

e.      That Plaintiff ABT has such other, further and different relief as this Court may deem just and proper in the premises.

Dated:      New York, New York
            May _15_, 2007

                              FREEHILL HOGAN & MAHAR LLP
                              Attorneys for Plaintiff
                              AMERICAS BULK TRANSPORT LTD.

                              By: _____
                                   Peter J Gutowski (PG 2200)
                                   80 Pine Street
                                   New York, NY 10005
                                   (212) 425-1900
                                   (212) 425-1901 fax

## ATTORNEY VERIFICATION

STATE OF NEW YORK     )
                        ) ss.:
COUNTY OF NEW YORK   )

        PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

        1.      I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

        2.      The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

        3.      The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                     PETER J. GUTOWSKI

Sworn to before me this
15ᵗʰ day of May, 2007.

        NOTARY PUBLIC

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/ 08

# EX. A



Copyright © 1981 and Published by: The Association of Ship Brokers & Agents (U.S.A.), Inc. (ASBA), New York. This derivative work may not be copied without the permission of the copyright owners.
Code Name: ASBATIME



# TIME CHARTER
## New York Produce Exchange Form

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946; June 12th, 1981

|  |  |
|---|---|
| | THIS CHARTER PARTY, made and concluded in *Copenhagen,* ................................. 1 |
| | ...............................................*07th* ...... day of ....*December, 2006* .... 19........ 2 |
| **Owners** | between *Americas Bulk Transport Ltd., Monrovia, Liberia* 3 |
| | ...............................................................*Disponent* ....................... Owners of 4 |
| | the good ...................................... Steamship/ Motorship *."BULK INTERPID"* ........ 5 |
| **Description** | of *see Clause 39* ............................ of ..................................tons gross register, and 6 |
| **of** | ............................................... tons net register, having engines of ......................... 7 |
| **Vessel** | horsepower and with hull, *hatches and cargo spaces,* machinery and equipment in a 8 |

throughly efficient

state, and classed ...............*ABS* .............................................................. of about  9
....*2,715,922* ........................................... cubic feet grain/bale capacity ....................  10
............................................................................................................, and about  11
*65,862/66,930* ...................................long/metric tons deadweight capacity (cargo and  12
bunkers, including fresh water and stores not exceeding *constanrs about 500 mts*  13
*excluding fresh water*

long/metric tons) on a salt water draft of ...*13.023 M* ................................. on summer  14
freeboard, inclusive of permanent bunkers, which are of the capacity of about  15
..........................................................................................................long/metric tons of  16
..........................................................................-fuel oil and ..........................  17
long/metric tons of ...........................................................................; and  18
capable of steaming, fully laden, under good weather conditions about  19
*see Description Clause* ........ knots on a consumption of about ...........................  20
long/metric tons of .......*The speed as described in this clause is warranted throughout the*  21
*currency of this charter party.* ........................................................................  22
now *trading* ...................................................................................................  23
................................................................................................................ and  24

| **Charterers** | *Lion Shipholdings Liberia* ................................................................. 25 |
|---|---|

................................................. Charterers of the City of ...........................................  26
The Owners agree to let and the Charterers agree to hire the vessel from the  27

| **Duration** | time of delivery for about   *one time charter trip via safe ports/safe berths/safe* 28 |
|---|---|

*anchorageas always accessible, always afloat, always within IWL via North China to*  29
*Spain with harmless clinker in bulk only, duration about 40/50 days without guarantee*  30
within below mentioned trading limits.

| **Sublet** | Charterers shall have liberty to sublet the vessel for all or any part of the 31 |
|---|---|

time covered by this Charter, but Charterers shall remain responsible for the  32
fulfillment of this Charter.  33

| **Delivery** | Vessel shall be placed at the disposal of the Charterers *on dropping last outward* 34 |
|---|---|

*sea pilot a safe port Shanghai/North China range, port in Owners' option, any time, day or*  35
*night, Sundays and Holidays included* ..........................................................................  36
..................................................................................................................................  37
in such deck or at such berth or place (where she may safely lie, always afloat,  38
at all times of tide, except as otherwise provided in Clause 6) as the Charterers  39
may direct. If such deck, berth or place be not available, time shall count as  40
provided in Clause 5. Vessel on her delivery shall be ready to receive *Charterers'*  41
*intended* cargo with

clean-swept holds and tight, staunch, strong and in every way fitted for ordi-  42
nary cargo service, having water ballast and with sufficient power to operate all  43
cargo-handling gear simultaneously (and with full complement of officers and  44
crew for a vessel of her tonnage *and flag* ), to be employed in carrying lawful *and in*  45
*accordance with IMO Regulations* merchan-

| **Dangerous** | dise excluding any goods of a dangerous, injurious, flammable or corrosive 46 |
|---|---|
| **Cargo** | nature unless carried in accordance with the requirements or recom- 47 |

mendations of the proper authorities of the state of the vessel's registry and of  48
the states of ports of shipment and discharge and of any intermediate states or  49
ports through whose waters the vessel must pass. Without prejudice to the  50

| **Cargo** | generality of the foregoing, in addition the following are specifically excluded: 51 |
|---|---|

| | | |
|---|---|---|
| Exclusions | ~~livestock of any description, arms, ammunition, explosives~~ ........................................... | 52 |
| | *Only harmless clinker in bulk allowed*............................................................................. | 53 |
| | *Cargo to be loaded/stowed in accordance with IMO regulatins and recommendations.* | 54 |
| | ........................................................................................................................................ | 55 |
| | ........................................................................................................................................ | 56 |
| Trading | The vessel shall be employed in such lawful trades between safe ports and | 57 |
| Limits | places within *IWL* ...................................................................................................... | 58 |
| | ......................................................................................... excluding *see Clause 71* ......... | 59 |
| | ........................................................................................................................................ | 60 |
| | ........................................................................................................................................ | 61 |
| | ........................................................................................................................................ | 62 |
| | as the Charterers or their agents shall direct, on the following conditions: | 63 |
| Owners | 1. The Owners shall provide and pay for the insurance of the vessel and | 64 |
| to | for all provisions, *grubage removal unless ocmpuylsory in port due regulations, in which* | 65 |
| Provide | *case Charterers to bear,* cabin, deck, engine-room and other necessary stores, ~~in-cluding boiler~~ *fresh* water *and luboils*; shall pay for wages, consular shipping and discharging | 66 |
| | fees of the crew *also all consular fees pertaining to vessel's nationality* and charges for port services *including boatage* pertaining to the crew; shall | 67 |
| | maintain vessel's class and keep her in a thoroughly efficient state in hull, *hatchcovers and cargo spaces,* | 68 |
| | machinery and equipment *with all certificates necessary to comply with requirements at all ports of call,* for and during the service. | 69 |
| Charterers | 2. The Charterers, while the vessel is on hire, shall provide and pay for all | 70 |
| to | the fuel except as otherwise agreed, port charges, *canal tolls, towage, boatage,* | 71 |
| Provide | *compulsory, customary and recovended* pilotages, towages, agen- | |
| | cies, commissions, consular charges (except those pertaining to individual | 72 |
| | crew members or flag of the vessel), and all other usual expenses except those | 73 |
| | stated in Clause 1, but when the vessel puts into a port for causes for which | 74 |
| | vessel is responsible, then all such charges incurred shall be paid by the | 75 |
| | Owners. Fumigations ordered because of illness of the crew *or cargoes carried priot* | 76 |
| | *to delivery* shall be for | |
| | Owners' account. *Owners to keep on board a valid deratization exemption certificate* | 77 |
| | *throughout the currency of the charter.* Fumigations ordered because of cargoes carried or ports | |
| | visited while vessel is employed under this Charter shall be for Charterers' | 78 |
| | account. ~~All other fumigations shall be for Charterers' account after vessel has~~ | 79 |
| | ~~been on charter for a continuous period of six months or more.~~ | 80 |
| | Charterers shall provide necessary dunnage and shifting boards, also | 81 |
| | any extra fittings requisite for a special trade or unusual cargo, but Owners | 82 |
| | shall allow them the use of any dunnage and shifting boards already aboard | 83 |
| | vessel. | 84 |
| Bunkers | 3. ~~The Charterers on delivery, and the Owners on redelivery, shall take~~ | 85 |
| on | ~~over and pay for all fuel and diesel oil remaining on board the vessel as~~ | 86 |
| Delivery | ~~hereunder. The vessel shall be delivered with:~~ ........................................*See Clause 54* | 87 |
| and | ~~long/metric*~~ tons of fuel oil at the price of .................................................~~per ton;~~ | 88 |
| Redelivery | ........................................................~~tons of diesel oil at the price of~~ ............................ | 89 |
| | ~~per ton. The vessel shall be redelivered with:~~ ............................................................... | 90 |
| | ~~tons of fuel oil at the price of~~ ...........................................~~per ton;~~.............................. | 91 |
| | .......................................~~tons of diesel oil at the price of~~ .............................~~per ton~~ | 92 |
| | ........................................................................................................................................ | 93 |
| | ........................................................................................................................................ | 94 |
| | (~~*Same tons apply throughout this clause~~) | 95 |
| Rate of | 4. The Charterers shall pay for the use and hire of the said vessel at the | 96 |
| Hire | rate of *USD 33,000.00 basis delivery Shanghai / USD 31,000.00 basis delivery North* | 97 |
| | *China* daily, *including overtime* ~~or~~ | |
| | .................................................................................. United States Currency | 98 |
| | ~~per ton on vessel's total deadweight carrying capacity, including bunkers and~~ | 99 |
| | ~~stores, on~~..................................................~~summer freeboard, per calendar month,~~ | 100 |
| | commencing on and from the day *adn time* of her delivery, as aforesaid, and at and after | 101 |
| | the same rate for any part of a *day* ~~month~~; hire shall continue until the hour of the | 102 |
| Redelivery | day of her redelivery in like good order and condition, ordinary wear and tear | 103 |
| Areas and | excepted, to the Owners (unless vessel lost) ~~at~~ ........*see Clause 96* ............................ | 104 |
| Notices | ........................................................................................................................................ | 105 |

|  |  |  |
|---|---|---|
|  | ....................................................................................... | 106 |
|  | ................................................................ unless otherwise mutually agreed. | 107 |
|  | Charterers shall give Owners not less than ........*15/12/8* .......................... days notice | 108 |
|  | of vessel's expected date of redelivery and probable port  *and 5/3/2/1 days definite* | 109 |
|  | *redelivery notice.*  ..................................................................................... | 110 |

**Hire Payment and Commencement**

5. Payment of hire shall be made ~~so as to be received by Owners or their~~ 111
~~designated payee in New York, i.e.~~ ........*see Clause 59* ............................................... 112
....................................................................................... 113
....................................................................................... 114
........................................................ in United States Currency, ~~in funds~~ 115
~~available to the Owners on the due date, semi-monthly~~ *15 days* in advance, and for 116
the
last *15 days* ~~half-month~~ or part of same the approximate amount of hire, and should 117
same not cover the actual time, hire shall be paid for the balance day by day as 118
it becomes due, if so required by Owners. Failing the punctual and regular 119
payment of the hire, or on any *fundamental* breach of this Charter, the Owners shall 120
be at
liberty to withdraw the vessel from the service of the Charterers without pre- 121
judice to any claims they (the Owners) may otherwise have on the Charterers. 122
Time shall count from *the date and hour the vessel has been at the disposal of* 123
*the Charterers* ~~7 A.M. on the working day following that on~~
~~which written notice of readiness has been given to Charterers or their agents~~ 124
~~before 4 P.M., but if required by Charterers, they shall have the privilege of~~ 125
~~using vessel at once, in which case the vessel will be on hire from the com-~~ 126
~~mencement of work.~~ 127

**Cash Advances**

~~Cash for vessel's ordinary disbursements at any port may be advanced,~~ 128
~~as required by the Captain, by the Charterers or their agents, subject to 2 1/2~~ 129
~~percent commission and such advances shall be deducted from the hire. The~~ 130
~~Charterers, however, shall in no way be responsible for the application of such~~ 131
~~advances.~~ *See Clause 70.* 132

**Berths**

6. Vessel shall be loaded and discharged in any *safe* dock or at any *safe* berth, 133
*safe anchorage* or *safe*
place that Charterers or their agents may direct, provided the vessel can safely 134
lie always afloat at any time of tide, ~~except at such places where it is customary~~ 135
~~for similar size vessels to safely lie aground.~~ 136

**Spaces Available**

7. The whole reach of the vessel's holds, *no deck cargo allowed* ~~decks~~, and 137
usual places of
loading (not more than she can reasonably and safely stow and carry), also 138
accommodations for supercargo, if carried, shall be at the Charterers' dis- 139
posal, reserving only proper and sufficient space for ship's officers, crew, 140
tackle, apparel, furniture, provisions, stores and fuel. 141

**Prosecution of Voyages**

8. The Captain shall prosecute his voyages with due despatch, and shall 142
render all customary assistance with ship's crew and boats. The Captain 143
(although appointed by the Owners) shall be under the orders and directions of 144
the Charterers as regards employment and agency; and Charterers are to 145
perform all cargo handling at their expense under the supervision of the 146
Captain, who is to sign the bills of lading for cargo as presented in conformity 147
with mate's or tally clerk's receipts. However, at Charterers' option, the Chart- 148
erers or their agents may sign bills of lading on behalf of the Captain always in 149

**Bills of Lading**

conformity with mate's or tally clerk's receipts *see Clause 62.* ~~All bills of lading shall be~~ 150
~~without prejudice to this Charter and the Charterers shall indemnify the Own-~~ 151
~~ers against all consequences or liabilities which may arise from any inconsis-~~ 152
~~tency between this Charter and any bills of lading or waybills signed by the~~ 153
~~Charterers or their agents or by the Captain at their request.~~ 154

**Conduct of Captain**

9. If the Charterers shall have reason to be dissatisfied with the conduct of 155
the Captain or officers, the Owners shall, on receiving particulars of the 156
complaint, investigate the same, and, if necessary, make a change in the 157
appointments. 158

**Supercargo and Meals**

10. The Charterers are entitled to appoint a supercargo, who shall accom- 159
pany the vessel and see that voyages are prosecuted with due despatch. He is 160
to be furnished with free accommodation and same fare as provided for 161
Captain's table, Charterers paying at the rate of ............................................ per day. 162
Owners shall victual pilots and customs officers, ~~and also, when authorized by~~ 163
~~Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc.,~~ 164
Charterers paying ~~at the rate of~~ *lumpsum USD 1,500.-* per *month/pro rata including* 165

*communication* meal for all such victual- | 166
ling. |

**Sailing**
**Orders**
**and Logs**

11. The Charterers shall furnish the Captain from time to time with all | 167
requisite instructions and sailing directions, in writing, and the Captain shall | 168
keep full and correct deck and engine logs of the voyage or voyages, which are | 169
to be patent to the Charterers or their agents, and furnish the Charterers, their | 170
agents or supercargo, when required, with a true copy of such deck and engine | 171
logs, showing the course of the vessel, distance run and the consumption of | 172
fuel. *See Clause 74.* | 173

**Ventilation**

12. The Captain shall use diligence in caring for the ventilation of the | 174
cargo. | 175

~~**Continuation**~~

13. The Charterers shall have the option of continuing this Charter for a | 176
further period of .................................................................................................... | 177
.......................................................................................................................................... | 178

**Laydays/**
**Cancelling**

14. If required by Charterers, time shall not commence before *23rd December,* | 179
*2006* ................................................. and should vessel not have given written | 180
notice of readiness on or before *latest by 23:59 hours on 31st December, 2006* but not | 181
later than 4 P.M. Charterers or their agents shall have the option of cancelling | 182
this Charter *as per standard Baltime Cancelling Clause.* at any time not later than the | 183
day of vessel's readiness. |

**Off**

15. In the event of the loss of time from deficiency and/or default *and/or strike* of | 184
officers |

**Hire**

or crew or deficiency of stores, fire, breakdown of, or damages to, hull, | 185
machinery or equipment, grounding, detention by average accidents to ship or | 186
cargo unless resulting from inherent vice, quality or defect of the cargo, | 187
drydocking for the purpose of examination or painting bottom, or by any other | 188
similar cause preventing the full working of the vessel, the payment of hire and | 189
overtime, if any, shall cease for the time thereby lost. *See Clause 65 and 66.* Should | 190
the vessel deviate |

or put back during a voyage, contrary to the orders or directions of the | 191
Charterers, for any reason other than accident to the cargo, the hire is to be | 192
suspended from the time of her deviating or putting back until she is again in | 193
the same or equidistant position from the destination and the voyage resumed | 194
therefrom. All fuel used by the vessel while off hire *plus the port charges, pilotages and* | 195
*other expneses directly related to the off hire* shall be for Owners' |

account. In the event of the vessel being driven into port or to anchorage | 196
through stress of weather, trading to shallow harbors or to rivers or ports with | 197
bars, any detention of the vessel and/or expenses resulting from such deten- | 198
tion shall be for the Charterers' account. If upon the voyage the speed be | 199
reduced by defect in, or breakdown of, any part of her hull, machinery or | 200
equipment, the time so lost, and the cost of any extra fuel consumed in | 201
consequence thereof, and all extra expenses shall be deducted from the hire. | 202

**Total**
**Loss**

16. Should the vessel be lost, money paid in advance and not earned | 203
(reckoning from the date of loss or being last heard of) shall be returned to the | 204
Charterers at once. | 205

**Exceptions**

The act of God, enemies, fire, restraint of princes, rulers and people, | 206
and all dangers and accidents of the seas, rivers, machinery, boilers and steam | 207
navigation, and errors of navigation throughout this Charter, always mutually | 208
excepted. | 209

**Liberties**

The vessel shall have the liberty to sail with or without pilots, to tow and | 210
to be towed, to assist vessels in distress, and to deviate for the purpose of | 211
saving life and property. | 212

**Arbitration**

17. Should any dispute arise between Owners and the Charterers, the | 213
matter in dispute shall be referred to three persons at New York, one to be | 214
appointed by each of the parties hereto, and the third by the two so chosen; | 215
their decision, or that of any two of them, shall be final and for the purpose of | 216
enforcing any award this agreement may be made a rule of the Court. The | 217
arbitrators shall be commercial men conversant with shipping matters. *See Clause 80* | 218
*for Arbitration.* |

**Liens**

18. The Owners shall have a lien upon all cargoes and all *sub-hirev* sub-freights | 219
for |

any amounts due under this Charter, including general average contributions, | 220
and the Charterers shall have a lien on the ship for all monies paid in advance | 221
and not earned, and any overpaid hire or excess deposit to be returned at once. | 222
Charterers will not suffer, nor permit to be continued, any lien or encumbrance | 223

incurred by them or their agents, which might have priority over the title and                    224
interest of the Owners in the vessel.                                                              225

**Salvage**   19. ~~All derelicts and salvage shall be for Owners' and Charterers' equal~~          226
~~benefit after deducting Owners' and Charterers' expenses and crew's propor-~~                    227
~~tion.~~                                                                                           228

**General**   General average shall be adjusted, according to York-Antwerp Rules                   229
**Average**   *1994 as amended in London* ~~1974, at such port or place in the United States as may~~   230
~~be selected by the~~
~~Owners and as to matters not provided for by these Rules, according to the~~                     231
~~laws and usage at the port of New York. In such adjustment disbursements in~~                    232
~~foreign currencies shall be exchanged into United States money at the rate~~                     233
~~prevailing on the dates made and allowances for damage to cargo claimed in~~                     234
~~foreign currency shall be converted at the rate prevailing on the last day of~~                  235
~~discharge at the port or place of final discharge of such damaged cargo from~~                   236
~~the ship. Average agreement or bond and such additional security, as may be~~                    237
~~required by the Owners, must be furnished before delivery of the goods. Such~~                   238
~~cash deposit as the Owners or their agents may deem sufficient as additional~~                   239
~~security for the contribution of the goods and for any salvage and special~~                     240
~~charges thereon, shall, if required, be made by the goods, shippers, consign-~~                  241
~~ees or owners of the goods to the Owners before delivery. Such deposit shall,~~                  242
~~at the option of the Owners, be payable in United States money and remitted to~~                 243
~~the adjuster. When so remitted the deposit shall be held in a special account at~~               244
~~the place of adjustment in the name of the adjuster pending settlement of the~~                  245
~~general average and refunds or credit balances, if any, shall be paid in United~~                246
~~States money.~~ *Bunkers and hire not to contribute to general average.*                         247

**York-**    ~~Charterers shall procure that all bills of lading issued during the cur-~~           248
**Antwerp**   ~~rency of the Charter will contain a provision to the effect that general average~~    249
**Rules**    ~~shall be adjusted according to York-Antwerp Rules 1974 and will include the~~         250
~~"New Jason Clause" as per Clause 23.~~                                                            251

**Drydocking**   20. The vessel was last drydocked ................................................................ The   252
~~Owners shall have the option to place the vessel in drydock during the cur-~~                     253
~~rency of this Charter at a convenient time and place, to be mutually agreed~~                     254
~~upon between Owners and Charterers, for bottom cleaning and painting~~                            255
~~and/or repair as required by class or dictated by circumstances. Payment of~~                     256
~~hire shall be suspended upon deviation from Charterers' service until vessel is~~                 257
~~again placed at Charterers' disposal at a point not less favorable to Charterers~~               258
~~than when the hire was suspended~~ *No drydocking except in case of emergency.*                   259
................................................................................................   260
................................................................................................   261

**Cargo**    21. Owners shall maintain the cargo-handling gear of the ship which is as                262
**Gear**    follows: *vessel is gearless* ...................................................................   263
................................................................................................   264
................................................................................................,   265
~~providing gear (for all derricks or cranes) capable of lifting capacity as de-~~                  266
~~scribed.~~ Owners shall also provide on the vessel *power and electric light* for night           267
work ~~lights~~ as on
board, *free of expense to the Charterers and same to be maintained in efficient working*          268
*order,*  but all additional lights over those on board shall be at Charterers'
expense. ~~The Charterers shall have the use of any gear on board the vessel. If~~                  269
~~required by Charterers, the vessel shall work night and day and all cargo-~~                      270
~~handling gear shall be at Charterers' disposal during loading and discharging.~~                  271

**Stevedore**   ~~In the event of disabled cargo-handling gear, or insufficient power to operate~~    272
**Stand-by**   ~~the same, the vessel is to be considered to be off hire to the extent that time is~~   273
~~actually lost to the Charterers and Owners to pay stevedore stand-by charges~~                    274
~~occasioned thereby. If required by the Charterers, the Owners are to bear the~~                   275
~~cost of hiring shore gear in lieu thereof.~~                                                      276

**~~Crew~~**    ~~22. In lieu of any overtime payments to officers and crew for work ordered~~       277
**~~Overtime~~**   ~~by Charterers or their agents, Charterers shall pay Owners $~~ ....................................   278
~~per month or pro rata.~~                                                                          279

**Clauses**    23. The following clause is to be included in all bills of lading issued               280
**Paramount**   hereunder:                                                                           281
This bill of lading shall have effect subject to the provisions of the                              282
~~Carriage of Goods by Sea Act of the United States, the~~ Hague Rules, or the                      283
Hague-Visby Rules, as applicable, or such other similar national legislation as                     284
may mandatorily apply by virtue of origin or destination of the bills of lading,                    285

which shall be deemed to be incorporated herein and nothing herein con- 286
tained shall be deemed a surrender by the carrier of any of its rights or 287
immunities or an increase of any of its responsibilities or liabilities under said 288
applicable Act. If any term of this bill of lading be repugnant to said applicable 289
Act to any extent, such term shall be void to that extent, but no further. 290

This Charter is subject to the following clauses all of which are to be 291
included in all bills of lading issued hereunder: 292

**New Both-to-Blame Collision Clause**

If the ship comes into collision with another ship as a result of the 293
negligence of the other ship and any act, neglect or default of the master, 294
mariner, pilot or the servants of the carrier in the navigation or in the manage- 295
ment of the ship, the owners of the goods carried hereunder will indemnify the 296
carrier against all loss or liability to the other or non-carrying ship or her 297
owners insofar as such loss or liability represents loss of, or damage to, or any 298
claim whatsoever of the owners of said goods, paid or payable by the other or 299
non-carrying ship or her owners to the owners of said goods and set off, 300
recouped or recovered by the other or non-carrying ship or her owners as part 301
of their claim against the carrying ship or carrier. 302

The foregoing provisions shall also apply where the owners, operators 303
or those in charge of any ships or objects other than, or in addition to, the 304
colliding ships or objects are at fault in respect to a collision or contact. 305

**New Jason Clause**

In the event of accident, danger, damage or disaster before or after 306
commencement of the voyage resulting from any cause whatsoever, whether 307
due to negligence or not, for which, or for the consequences of which, the 308
carrier is not responsible, by statute, contract, or otherwise, the goods, ship- 309
pers, consignees, or owners of the goods shall contribute with the carrier in 310
general average to the payment of any sacrifices, losses, or expenses of a 311
general average nature that may be made or incurred, and shall pay salvage 312
and special charges incurred in respect of the goods. 313

If a salving ship is owned or operated by the carrier, salvage shall be 314
paid for as fully as if salving ship or ships belonged to strangers. Such deposit 315
as the carrier or his agents may deem sufficient to cover the estimated con- 316
tribution of the goods and any salvage and special charges thereon shall, if 317
required, be made by the goods, shippers, consignees or owners of the goods 318
to the carrier before delivery. 319

**War Clauses**

(a) No contraband of war shall be shipped. ~~Vessel shall not be re-~~ 320
~~quired, without the consent of Owners, which shall not be unreasonably~~ 321
~~withheld, to enter any port or zone which is involved in a state of war, warlike~~ 322
~~operations, or hostilities, civil strife, insurrection or piracy whether there be a~~ 323
~~declaration of war or not, where vessel, cargo or crew might reasonably be~~ 324
~~expected to be subject to capture, seizure or arrest, or to a hostile act by a~~ 325
~~belligerent power (the term "power" meaning any de jure or de facto authority~~ 326
~~or any purported governmental organization maintaining naval, military or air~~ 327
~~forces).~~ 328

~~(b) If such consent is given by Owners, Charterers will pay the provable~~ 329
~~additional cost of insuring vessel against hull war risks in an amount equal to~~ 330
~~the value under her ordinary hull policy but not exceeding a valuation of~~ 331
~~.....................................................In addition, Owners may purchase and Charterers~~ 332
~~will pay for war risk insurance on ancillary risks such as loss of hire, freight~~ 333
~~disbursements, total loss, blocking and trapping, etc. If such insurance is not~~ 334
~~obtainable commercially or through a government program, vessel shall not~~ 335
~~be required to enter or remain at any such port or zone.~~ 336

~~(c) In the event of the existence of the conditions described in (a)~~ 337
~~subsequent to the date of this Charter, or while vessel is on hire under this~~ 338
~~Charter, Charterers shall, in respect of voyages to any such port or zone~~ 339
~~assume the provable additional cost of wages and insurance properly incurred~~ 340
~~in connection with master, officers and crew as a consequence of such war,~~ 341
~~warlike operations or hostilities.~~ 342

**Ice**

24. The vessel shall not be required to enter or remain in any icebound port 343
or area, nor any port or area where lights or lightships have been or are about 344
to be withdrawn by reason of ice, nor where there is risk that in the ordinary 345
course of things the vessel will not be able on account of ice to safely enter and 346
remain in the port or area or to get out after having completed loading or 347
discharging. 348

**Navigation**

25. Nothing herein stated is to be construed as a demise of the vessel to the 349
Time Charterers. The Owners shall remain responsible for the navigation of the 350

vessel, acts of pilots and tug boats, insurance, crew, and all other similar 351
matters, same as when trading for their own account. 352

**Commissions**     26. A commission of ........*1.25* ......................... percent is payable by the vessel 353
and Owners to *Lightship Chartering A/S, Copenhagen* .................................................... 354
............................................................................................................................................... 355
on hire earned and paid under this Charter, and also upon any continuation or 356
extension of this Charter. 357

**Address**     27. An address commission of .................................*3.75* ......................... percent 358
is payable to ..........*Charterers* ....................................................................................... 359
............................................................................................................................................... 360
on hire earned and paid under this Charter. 361

**Rider**     Rider Clauses .......*39 to 108, both inclusive,* ................................................ as at- 362
tached hereto are incorporated in this Charter. 363

Rider of Suggested Additional Clauses

# (None of these Clauses apply unless expressly agreed during the

Extension**ations a**28. If it clearly appears that, despite the exercise of due diligence by | 364
of | Owners, the vessel will not be ready for delivery by the cancelling date, and | 365
Cancelling | provided Owners are able to state with reasonable certainty the date on which | 366

| | |
|---|---|
| | the vessel will be ready, they may, at the earliest seven days before the vessel is | 367 |
| | expected to sail for the port or place of delivery, require Charterers to declare | 368 |
| | whether or not they will cancel the Charter. Should Charterers elect not to | 369 |
| | cancel, or should they fail to reply within seven days or by the cancelling date, | 370 |
| | whichever shall first occur, then the seventh day after the expected date of | 371 |
| | readiness for delivery as notified by Owners shall replace the original cancel- | 372 |
| | ling date. Should the vessel be further delayed, Owners shall be entitled to | 373 |
| | require further declarations of Charterers in accordance with this Clause. | 374 |
| Grace Period | 29. Where there is failure to make "punctual and regular payment" of hire, | 375 |
| | Charterers shall be given by Owners ~~two~~ *three* clear banking days (as recognised at | 376 |
| | the agreed place of payment) written notice to rectify the failure, and when so | 377 |
| | rectified within those two days following Owners' notice, the payment shall | 378 |
| | stand as regular and punctual. Payment received by Owners' bank after the | 379 |
| | original due date will bear interest at the rate of 0.1 percent per day which shall | 380 |
| | be payable immediately by Charterers in addition to hire. | 381 |
| | At any time while hire is outstanding the Owners shall be absolutely | 382 |
| | entitled to withhold the performance of any and all of their obligations hereun- | 383 |
| | der and shall have no responsibility whatsoever for any consequences thereof | 384 |
| | in respect of which the Charterers hereby indemnify the Owners and hire shall | 385 |
| | continue to accrue and any extra expenses resulting from such withholding | 386 |
| | shall be for the Charterers' account. | 387 |
| Cargo Claims | 30. Damage to and claims on cargo shall be for Owners' account if caused | 388 |
| | by unseaworthiness of the vessel, but shall be for Charterers' account if | 389 |
| | caused by handling and stowage, including slackage. Claims for shortage ex | 390 |
| | ship shall be shared equally between Owners and Charterers. | 391 |
| War Cancellation | 31. In the event of the outbreak of war (whether there be a declaration of | 392 |
| | war or not) between any two or more of the following countries: The United | 393 |
| | States of America, the United Kingdom, France, the Union of Soviet Socialist | 394 |
| | Republics, the People's Republic of China, ................................................................ | 395 |
| | ................................................................................................................................ | 396 |
| | | 397 |
| | or in the event of the nation under whose flag the vessel sails becoming | 398 |
| | involved in war (whether there be a declaration of war or not), either the | 399 |
| | Owners or the Charterers may cancel this Charter. Whereupon the Charterers | 400 |
| | shall redeliver the vessel to the Owners in accordance with Clause 4; if she has | 401 |
| | cargo on board, after discharge thereof at destination, or, if debarred under | 402 |
| | this Clause from reaching or entering it, at a near open and safe port as | 403 |
| | directed by the Owners; or, if she has no cargo on board, at the port at which | 404 |
| | she then is; or, if at sea, at a near open and safe port as directed by the Owners. | 405 |
| | In all cases hire shall continue to be paid in accordance with Clause 4 and | 406 |
| | except as aforesaid all other provisions of this Charter shall apply until rediliv- | 407 |
| | ery. | 408 |
| War Bonus | 32. Any war bonus to officers and crew due to vessel's trading or cargo | 409 |
| | carried shall be for Charterers' account. | 410 |
| Requisition | 33. Should the vessel be requisitioned by the government of the vessel's | 411 |
| | flag during the period of this Charter, the vessel shall be deemed to be off hire | 412 |
| | during the period of such requisition, and any hire paid by the said government | 413 |
| | in respect of such requisition period shall be retained by Owners. The period | 414 |
| | during which the vessel is on requisition to the said government shall count as | 415 |
| | part of the period provided for in this Charter. | 416 |
| | If the period of requisition exceeds .........**six** ...........................months, either | 417 |
| | party shall have the option of cancelling this Charter and no consequential | 418 |
| | claim may be made by either party. | 419 |
| On/Off-hire Survey | 34. Prior to delivery and redelivery the parties shall each appoint sur- | 420 |
| | veyors, for their respective accounts, who shall conduct joint on-hire/off-hire | 421 |
| | surveys. A single report shall be prepared on each occasion and signed by | 422 |
| | each surveyor, without prejudice to his right to file a separate report setting | 423 |

forth items upon which the surveyors cannot agree. If either party fails to have 424
a representative attend the survey and sign the joint survey report, such party 425
shall nevertheless be bound for all purposes by the findings in any report 426
prepared by the other party. On-hire survey shall be on Charterers' time and 427
off-hire survey on Owners' time. 428

**Stevedore Damage**

~~35. Any damage caused by stevedores during the currency of this Charter~~ 429
~~shall be reported by Captain to Charterers or their agents, in writing, within 24~~ 430
~~hours of the occurrence or as soon as possible thereafter. The Captain shall~~ 431
~~use his best efforts to obtain written acknowledgement by responsible parties~~ 432
~~causing damage unless damage should have been made good in the mean-~~ 433
~~time.~~ 434

~~Stevedore damages involving seaworthiness shall be repaired without~~ 435
~~delay to the vessel after each occurrence in Charterers' time and shall be paid~~ 436
~~for by the Charterers. Other minor repairs shall be done at the same time, but if~~ 437
~~this is not possible, same shall be repaired while vessel is in drydock in~~ 438
~~Owners' time, provided this does not interfere with Owners' repair work, or by~~ 439
~~vessel's crew at Owners' convenience. All costs of such repairs shall be for~~ 440
~~Charterers' account. Any time spent in repairing stevedore damage shall be for~~ 441
~~Charterers' account.~~ 442

~~Charterers shall pay for stevedore damages whether or not payment~~ 443
~~has been made by stevedores to Charterers.~~ 444

**Charterers' Colors**

~~36. Charterers shall have the privilege of flying their own house flag and~~ 445
~~painting the vessel with their own markings. The vessel shall be repainted in~~ 446
~~Owners' colors before termination of the Charter. Cost and time of painting,~~ 447
~~maintaining and repainting those changes effected by Charterers shall be for~~ 448
~~Charterers' account.~~ 449

**Return Premium**

37. Charterers shall have the benefit of any return insurance premium 450
receivable by Owners from their underwriters as and when received from 451
underwriters by reason of vessel being in port for a minimum period of 30 days 452
if on full hire for this period or pro rata for the time actually on hire. 453

38. The vessel shall be off hire during any time lost on account of vessel's 454
non-compliance with government and/or state and/or provincial regulations 455
pertaining to water pollution. In cases where vessel calls at a U.S. port, Owners 456
warrant to have secured and carry on board the vessel a Certificate of Financial 457
Responsibility as required under U.S. law. 458

This Charter Party is a computer generated copy of the ASBATIME (1981) form printed under licence from the Association of Ship Brokers & Agents (U.S.A). Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licencee or end user as appropiate and not by the author.

RIDER TO CHARTER PARTY
DATED COPENHAGEN, 7TH DECEMBER, 2006
M/V "BULK INTREPID" / LION SHIPHOLDINGS



**Lightship**
Chartering A/S

## CLAUSE 39

```
NAME      :      MV "BULK INTREPID" EX: "MYRINA"
TYPE      :      GLESS, SD, ST, BULK CARRIER
FLAG / PORT OF REG. / YR BLT    :      MARSHALL ISLANDS / MAJURO / MAY 1982
OFFICIAL / IMO NUMBER    :      2163 / 8025147
CLASS     :      ABS
CALL SIGN       :      V 7 G S 2
GRT/NRT (INTL.) :      36,950      / 20,694
GRT/NRT (SUEZ)  :      39,266      /
PC/UMS (PAN.)   :      39,266 PC GROSS/ 30,074 PC UMS/ NET
LOA / LBP / BEAM       :      225M / 215.00M / 32.24M
DWAT / DRFT      :      65,862 LT - 66,930 MT / 13.023M SSW
MOULDED DEPTH   :      18.30 M
TPI / TPC       :      - / 65.9 MT ON SSW MARKS
HO/HA     :      7 / 7
HATCH COVER TYPE        :      SIDE-ROLLING
HATCH SIZES     :      H#1: 11.62 X 11.62M WIDE / H#2 - 7: 15.77 X 15.28M EACH
CARGO GEAR      :      N/A
GEAR LOCATION   :      N/A
SPEED / CONSUMPTION:
LADEN: ABOUT 13.5 KN/ABOUT 33.0 LT IFO + ABOUT 1.8 LT MDO IN A/E (33.5)/DAY
BALST: ABOUT 13.5 KN/ABOUT 29.0 LT IFO + ABOUT 1.8 LT MDO IN A/E  (29.5)/DAY ECONOMICAL
SPEED/CONSUMPTION:
ABOUT 13.0K ON ABOUT 30.5LT(L)/ ABOUT 27LT(B) IFO (380 CST) + ABOUT 1.8LT MDO
ABOUT 12.5K ON ABOUT 28.0LT(L)/ ABOUT 26LT(B) IFO (380 CST) + ABOUT 1.8LT MDO
PORT CONSUMPTION        :      IDLE: ABOUT 1.8 LT MDO/DAY + ABOUT 1.0 LT IN BOILER
WKG: ABOUT 3.0 LT MDO/DAY + ABOUT 1.0 LT IN BOILER
BUNKER SPECS    :      IFO: ISO 8217 RMG 35 WITH MAX VISCOSITY 380 CST AT
                              50 DEGREES CENTIGRADE
                              MDO: DMB
OWNER'S P&I     :      WEST OF ENGLAND SHIPOWNERS MUTUAL ASSURANCE ASSOCIATION
(LUXEMBOURG)
GRAIN CUBIC WITH BREAKDOWN BY HOLD:
HOLD      GRAIN (100% - TRIMMED ENDS)
```

| NO. | CUM | | CUFT | CUM | CUFT |
|-----|-----|-----|------|-----|------|
| 1. | 9,242.8 | 326,406 | | | |
| 2. | 11,423.9 | 403,431 | | | |
| 3. | 11,421.1 | 403,332 | | | |
| 4. | 11,326.4 | 399,988 | | | |
| 5. | 11,390.6 | 402,255 | | | |
| 6. | 11,432.2 | 403,724 | | | |
| 7. | 10,669.4 | 376,786 | | | |
| TOTAL | 76,906.4 | 2,715,922 | | | |

```
ALL DIMENSIONS, QUANTITIES, CAPACITIES AND VOLUMES UNDERSTOOD TO BE "ABOUT",


-OWNERS CFM VSL ISM COVERED
-OWNERS CFM VSL HIGHEST LLOYDS OR EQUIV A1 CLASSED
-OWNERS CFM VSL FULLY PANDI COVERED BY AN IASAC MEMBER
```

## CLAUSE 40

ON DELIVERY VESSEL TO HAVE ON BOARD AN INTERNATIONAL TONNAGE CERTIFICATE, all kind
of internationally required certificates to trade for the ports/berths fixed through this Charter Party VALID
FOR THE DURATION OF THIS CHARTER PARTY AND SUCH TONNAGE CERTIFICATE SHALL BE
ACCEPTABLE BY THE LOCAL AUTHORITIES AT THE COUNTRIES OF CALL WITHIN THE TRADING
LIMITS OF THIS CHARTER PARTY. SHOULD SUCH TONNAGE CERTIFICATE NOT BE ACCEPTABLE
TO THE LOCAL AUTHORITIES AND/OR RESULT IN AN UP-LIFT IN PORT EXPENSES, TIME AND

RIDER TO CHARTER PARTY
DATED COPENHAGEN, 7TH DECEMBER, 2006
M/V "BULK INTREPID" / LION SHIPHOLDINGS



EXPENSES FOR ISSUING AN ACCEPTABLE TONNAGE CERTIFICATE AND/OR AN UP-LIFT IN PORT
EXPENSES SHALL BE FOR OWNERS' ACCOUNT.

OWNERS ARE OBLIGED TO DELIVER AND KEEP THE VESSEL, HER CREW AND ANYTHING
PERTAINING THERETO SUPPLIED WITH UP TO DATE AND COMPLETE CERTIFICATES,
APPROVALS AND EQUIPMENT ENABLING THE VESSEL AND HER CREW TO CARRY THE CARGOES
AS DIRECTED BY THE CHARTERERS, WITHIN PERMISSIBLE TRADING LIMITS, EVEN WHERE SUCH
CERTIFICATES, APPROVALS, EQUIPMENT AND FITTINGS BECOME NECESSARY BEFORE OR
AFTER DELIVERY UNDER THIS CHARTER PARTY. IT IS THE RESPONSIBILITY OF THE MASTER
AND THE OWNERS TO ARRANGE FOR ANY SPECIAL VACCINATION REQUIRED AT THE PORTS OF
CALL AND TO KEEP ON BOARD CORRESPONDING VALID CERTIFICATES. FAILING WHICH, ANY
TIME LOST AND ALL EXTRA EXPENSES TO BE FOR OWNERS' ACCOUNT AND MAY BE DEDUCTED
FROM HIRE. OWNERS' P AND I CLUB: THE STEAMSHIP MUTUAL.

THE VESSEL HAS ON BOARD CERTIFICATE OF FINANCIAL RESPONSIBILITY (WATER POLLUTION)
ISSUED BY THE DEPARTMENT OF TRANSPORTATION, U.S. COAST GUARD NATIONAL POLLUTION
CENTER. THE ABOVE CERTIFICATE SHALL REMAIN VALID DURING THE CURRENCY OF THE
CHARTER.

CLAUSE 41
NORMAL QUARANTINE TIME AND EXPENSE TO ENTER PORT FOR CHARTERERS' ACCOUNT, BUT
ANY TIME OR DETENTION AND EXPENSES FOR QUARANTINE DUE TO PESTILENCE, ILLNESS
ETC., OF THE VESSEL'S MASTER, OFFICERS AND CREW TO BE FOR OWNERS' ACCOUNT.

CLAUSE 42
OWNERS ARE TO BE RESPONSIBLE FOR ANY CONSEQUENCES OWING TO SMUGGLING BY
VESSEL'S OFFICERS AND/OR CREW.

CLAUSE 43
VESSEL'S EQUIPMENT INCLUDING HOLD ACCESS ARRANGEMENTS SHALL COMPLY WITH THE
REGULATIONS OF THE COUNTRIES TO WHICH THE VESSEL MAY TRADE. IF STEVEDORES,
LONGSHOREMEN OR OTHER WORKMEN ARE NOT PERMITTED TO WORK DUE TO FAILURE OF
MASTER AND/OR OWNERS AND/OR OWNERS ' AGENTS TO COMPLY WITH THE
AFOREMENTIONED REGULATIONS, THEN CHARTERERS MAY SUSPEND HIRE FOR THE TIME
THEREBY LOST.

CLAUSE 44
OWNERS WARRANT THE VESSEL HAS CLEAR UNOBSTRUCTED HOLDS AND IS SUITABLE FOR
GRAB DISCHARGING. CHARTERERS ARE TO HAVE THE PRIVILEGE OF USING BULLDOZERS IN
VESSEL'S HOLDS, PROVIDED NOT EXCEEDING VESSEL'S TANKTOP STRENGHT.  BULLDOZERS TO
WEAR RUBBER WHEELS WHEN COMING INTO DIRECT CONTACT HWITH VESSEL'S TANKTOPS.

CLAUSE 45
OWNERS WARRANT THAT THE VESSEL IS ELIGIBLE FOR BUNKERS IN THE UNITED STATES OF
AMERICA, ITS TERRITORIES AND POSSESSIONS IN ACCORDANCE WITH DIRECTIVE FROM THE
UNITED STATES DEPARTMENT OF COMMERCE, OFFICE OF INTERNATIONAL TRADE.

CLAUSE 46
OWNERS WARRANT THE VESSEL IS FITTED FOR TRANSIT OF THE SUEZ CANAL AND THE
PANAMA CANAL AND HAS VALID CERTIFICATES COVERING THE TRANSIT OF THE SUEZ CANAL
AND THE PANAMA CANAL.

RIDER TO CHARTER PARTY
DATED COPENHAGEN, 7TH DECEMBER, 2006
M/V "BULK INTREPID" / LION SHIPHOLDINGS



**Lightship**
Chartering A/S
CVR 2000-3-4

**CLAUSE 47**
OWNERS TO GIVE APPROXIMATE NOTICE ON FIXING, AS WELL AS 7/5/3/2/1 days delivery notice to
Charterers.

**CLAUSE 48**
TIMECHARTERERS TO HAVE THE PRIVILEGE OF PAINTING THEIR OWN OR SUB-CHARTERERS'
FUNNEL MARK AND/OR INSIGNIA ON VESSEL'S SIDES AT THEIR OWN EXPENSE AND IN THE OWN
TIME AND SHALL REPAINT OWNERS' FUNNEL MARK AND/OR VESSEL'S SIDES PRIOR TO
REDELIVERY AT CHARTERERS' EXPENSE AND IN CHARTERERS' TIME.

TIMECHARTERERS ALSO HAVE THE OPTION OF FLYING THEIR OWN OR SUB-CHARTERERS'
HOUSE FLAG.

**CLAUSE 49**
VESSELS' HOLDS ON ARRIVAL FIRST LOADING PORT TO BE CLEAN SWEPT/WASHED DOWN BY
FRESH WATER AND DRIED UP SUITABLE FOR GRAIN LOADING IN ALL RESPECTS, FREE OF SALT,
RUST SCALE AND PREVIOUS CARGO RESIDUE TO THE SATISFACTION OF LOCAL INDEPANDANT
SURVEYORS. SHOULD THE VESSEL'S HOLDS NOT BE APPROVED BY APPROVED SURVEYORS
THE VESSEL TO BE PLACED OFF-HIRE FROM THE REJECTION TIME UNTIL THE VESSEL IS
ACCEPTED. IN THE EVENT OF PARTIAL PASS, HIRE TO BE PAID PRO-RATA TO THE NUMBER OF
HOLDS PASSED.

VESSEL IS TO BE REDELIVERED WITH HOLDS IN LIKE GOOD ORDER AND CONDITION AS ON
DELIVERY, BEING SWEPT, WASHED AND DRIED, FREE OF CARGO RESIDUE AND SMELL.
CHARTERERS HAVE THE OPTION TO REDELIVER THE VESSEL WITH HOLDS UNCLEAN AS LEFT
BY STEVEDORES AGAINST PAYING U.S.$ 6,000 IN LIEU OF HOLDS CLEANING which to be paid
together with last hire.

THE CHARTERERS ARE TO REMOVE AND DISPOSE OF ALL DUNNAGE, LASHING MATERIAL ETC.
FROM THE HOLDS AT CHARTERERS TIME AND EXPENSE.

**CLAUSE 50**
OWNERS WARRANT THE VESSEL IS GRAINFITTED IN ACCORDANCE WITH LATEST SOLAS AND
AMENDMENTS WITHOUT REQUIRING BAGGING/STRAPPING SECURING WHEN LOADED WITH A
FULL CARGO OF BULK GRAIN. VESSEL HAS ON BOARD APPROVED TABLE OF HEELING
MOMENTS FOR "FILLED HOLDS-ENDS UNTRIMMED" AND THUS HAS DISPENSATION FROM
TRIMMING OF END SPACES. FURTHERMORE, VESSEL TO HAVE ON BOARD A VALID GRAIN
LOADING BOOKLET IN ACCORDANCE WITH SOLAS/IMO LATEST REGULATIONS.

**CLAUSE 51**
CHARTERERS ARE TO HAVE THE BENEFIT OF ANY RETURN INSURANCE PREMIUM RECEIVED
FROM THE UNDERWRITERS, BY REASON OF VESSEL BEING IN PORT IDLE FOR A MINIMUM
PERIOD OF THIRTY (30) DAYS, PROVIDED VESSEL IS ON-HIRE.

**CLAUSE 52**
A JOINT ON/OFF HIRE BUNKER AND CONDITION SURVEY IS TO BE CARRIED OUT. THE ON HIRE
SURVEY TO BE CONDUCTED BY THE PRESENT CHARTERERS, THE OWNERES AND CHARTERERS
AND THE COST IS TO BE SPLIT EQUALLY BETWEEN THE 3 PARTIES.

OTHERWISE THE CHARTERERS/OWNERS ARE TO APPOINT THEIR OWN SURVEYOR. OWNERS
HAVE THE RIGHT TO APPOINT MASTER TO ACT AS OWNERS' SURVEYOR.

RIDER TO CHARTER PARTY
DATED COPENHAGEN, 7TH DECEMBER, 2006
M/V "BULK INTREPID" / LION SHIPHOLDINGS



**Lightship**
Chartering A/S

CLAUSE 53
CARGO EXCLUSIONS:
NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CHARTER, THE CHARTERERS AGREE
THAT THE FOLLOWING CARGOES ARE EXCLUDED FROM CARRIAGE.

ACIDS, AMMONIA NITRATES, AMMUNITION, AGGREGATES, ARMS, ASPHALT, ASBESTOS, ALL
MEALS INCLUDING FISHMEAL AND SEED MEALS EXCEPT CHARTERERS PERMITTED TO LOAD
SOYABEAN MEALS, BORAX, CALCIUM CARBIDE, PIG IRON, CARBON BLACK, CALCIUM HYDROXIDE
CALCIUM HYDROCHLORIDE, CEMENT, ~~CEMENT CLINKERS~~, CHARCOAL COPRA, LEAD, ZINC AND
COPPER CONCENTRATE, COTTON, CREOSOTED GOODS, EXPELLERS, EXPARTO GRASS
FERROSILICON, HIDES, HOT BRIQUTTED IRON AND DIRECT REDUCED IRON, KAOLIN AND OTHER
CLAYS, LIVESTOCK, LOGS, MOTOR SPIRIT, NAPTHA, NEWSPRINT, PALM KERNEL EXTRACTION,
PITCH, PYRITES, PITCH IN BULK, PETROLEUM COKE, RESIN, RADIOACTIVE MATERIALS, SALT,
SPENT OXIDE, SODA ASH, SULPHUR, STONE AND MARBLE BLOCKS SCRAP INCLUDING
MOTORBLOCKS & TURNINGS, HMS 1+2, TAR, EXPLOSIVES (BLACK POWDER, BLASTING CAPS,
DETONATOR CAPS, LOADED BOMBS, DYNAMITE, TNT, ETC.) NO DECK CARGO PERMITTED AND
NO EQUIPMENT OF ANY KIND TO BE PLACED ON THE DECK AND/OR HATCHES WITHOUT
OWNERS' PRIOR CONSENT.

SUNFLOWER SEEDS CARRIAGE ALLOWED BUT SUBJECT TO COMPLIANCE WITH IMO BC CODE
APPENDIX C REGULATIONS ONLY.

ALL INJURIOUS INFLAMMABLE OR DANGEROUS AND/OR INJURIOUS AND/OR INFLAMMABLE
AND/OR CORROSIVE CARGOES NOT COMPATIBLE WITH VESSEL'S CAPABILITY AND ANY OTHER
CARGOES AFFECTING IMMEDIATE OR LONG TERM SAFETY OF THE VESSEL, INCLUDING
NUCLEAR AND / OR RADIO ACTIVE MATERIALS AND WASTE.

During this Charter vessel to carry harmless clinker in bulk only.

CLAUSE 54
BUNKERS ON DELIVERY abt. 390/10 mts IFO + abt. 90/120 mts MDO.
Prices USD 280 pmt IFO and USD 560 pmt MDO.
Same quantities/prices both ends.

CHARTERERS TO PAY FOR BUNKERS ON DELIVERY TOGETHER WITH THE FIRST HIRE PAYMENT.
OWNERS TO BE ALLOWED TO REPLENISH BUNKERS PRIOR TO REDELIVERY PROVIDED SAME
DOES NOT INTERFERE WITH CHARTERERS' CARGO OPERATIONS.

FOR BUNKERS SUPPLIED IN BRAZIL, PETROBRAZ SPECS TO APPLY. BUNKERS SUPPLIED BY THE
CHARTERERS TO BE IN COMPLIANCE WITH FOLLOWING SPECIFICATION: HFO (380 CST) – ISO
8217 1996 RMG 35. IF RESULTS SHOW WORSE QUALITY THAN THE ABOVE SPECS, THE
CHARTERERS ARE TO BE RESPONSIBLE FOR ANY DAMAGE TO THE VESSEL'S ENGINES.

FURTHERMORE, OWNERS ARE NOT TO BE RESPONSIBLE FOR ANY UNDER PERFORMANCE/
OVERCONSUMPTION OF THE VESSEL AS A RESULT THEREOF. THE CHARTERERS TO DEDUCT
VALUE OF BUNKERS ON REDELIVERY FROM THE LAST HIRE PAYMENTS.

CLAUSE 55
THE MASTER OR ONE OFFICER APPOINTED BY THE MASTER SHALL SUPERVISE STOWAGE OF
THE CARGO AS WELL AS INSTRUCT ONE OF HIS OFFICERS TO SUPERVISE ALL LOADING,
HANDLING AND DISCHARGE OF THE CARGO. HE IS TO FURNISH CHARTERERS WITH STOWAGE
PLAN AND OTHER DOCUMENTS CUSTOMARILY USED, AS AND WHEN REQUIRED, ALL IN THE
ENGLISH LANGUAGE.

CHARTER PARTY
PENHAGEN, 7TH DECEMBER, 2006
NTREPID" / LION SHIPHOLDINGS



6

7
ERS ARE TO HAVE FREE USE OF ANY LASHING MATERIALS ON BOARD. CHARTERERS
GOOD ANY DAMAGE OR LOSS TO LASHING MATERIAL FROM THE VESSEL, FAIR WEAR
EXCEPTED. ANY MATERIAL SUPPLIED BY CHARTERERS TO BE RECEIPTED FOR AND
D BACK TO CHARTERERS BEFORE REDELIVERY OF THE VESSEL EXCEPT FOR THAT
D DURING THE VOYAGE.

8
ENT OF DISABLED CARGO HANDLING GEAR, OR INSUFFICIENT POWER TO OPERATE
, THE VESSEL IS TO BE CONSIDERED TO BE OFF HIRE TO THE EXTENT THAT TIME IS
LOST TO THE CHARTERERS AND OWNERS TO PAY STEVEDORE STAND-BY CHARGES
NED THEREBY. IF REQUIRED BY THE CHARTERERS, THE OWNERS ARE TO BEAR THE
HIRING SHORE GEAR IN LIEU THEREOF.

TERERS ARE NOT TO BE RESPONSIBLE FOR STEVEDORE OR OTHER DAMAGE TO THE
NLESS MASTER:

/ORS TO OBTAIN WRITTEN ACKNOWLEDGEMENT OF RESPONSIBILITY FROM PARTY
ED.

TS DAMAGE TO CHARTERERS WITHOUT DELAY, BUT LATEST PRIOR SAILING FROM
OCCURRENCE, UNLESS HIDDEN DAMAGE WHICH TO BE REPORTED UPON
ON OF DISCHARGE.

NT SURVEY MADE ON BEHALF OF THE 3 PARTIES (OWNERS, CHARTERERS AND
RES) TO ESTABLISH THE EXTENT OF DAMAGE.

TERERS, PROVIDED THE ABOVE CONDITIONS A), B) AND C) ARE MET, ARE TO BE
LY RESPONSIBLE FOR FULFILLMENT OF ANY PAYMENT DUE TO OWNERS AND NOT
FROM STEVEDORES. DAMAGES AFFECTING SEAWORTHINESS FOR WHICH
ERS ARE RESPONSIBLE, ARE TO BE REPAIRED BY CHARTERERS AT THEIR TIME AND
HE PLACE OF OCCURRENCE AND VESSEL TO REMAIN ON-HIRE. DAMAGES NOT
G SEA/CARGO WORTHINESS TO BE REPAIRED DURING NEXT DRYDOCKING, UNLESS
BE MUTUALLY AGREED.

9
BANK DETAILS:
PAYMENTS TO BE MADE TO THE FOLLOWING ACCOUNT:

BLE VIA TELEGRAPHIC TRANSFER TO:
USA - 425 Fifth Ave. New York, USA
e: MRMDUS33
A: 021001088
: 0108
Credit to: The Bank of Bermuda Ltd., Hamilton, Bermuda
: 005584 / S.W.I.F.T. CODE: BBDA BMHM
LLSEAS LOGISTICS , ACCT NO.: 010-097574-501
LK INTREPID V No 19 CP dated December 7, 2006



RIDER TO CHARTER PARTY
DATED COPENHAGEN, 7TH DECEMBER, 2006
M/V "BULK INTREPID" / LION SHIPHOLDINGS

1st 15th days hire + value of bunkers onboard on delivery to be paid latest 3 banking days after vessels delivery. Thereafter every 15 days hire payable in advance, all remaining hire until last day of discharge to be paid  before completion of the discharge operations

## CLAUSE 60
NOTWITHSTANDING THE CONTENTS OF CLAUSES 4 AND 5, THE CHARTERERS MAY WITHHOLD FROM CHARTER HIRE DURING THE PERIOD OF THIS CHARTER PARTY SUCH UNDISPUTED AMOUNTS DUE FOR OFF-HIRE, AS WELL AS DEDUCT FROM THE LAST PAYMENT(S) OF CHARTER HIRE THE ESTIMATED COST OF BUNKERS REMAINING ON BOARD ON REDELIVERY AND THE ESTIMATED EXPENSES, NOT EXCEEDING U.S.$ 250 PER PORT, INCLUDING CANAL(S), INCURRED BY CHARTERERS FOR OWNERS' ACCOUNT, NOTWITHSTANDING THAT VOUCHERS MAY NOT HAVE REACHED CHARTERERS FOR SUBMISSION TO OWNERS AT THAT TIME.

CHARTERERS MAY ALSO DEDUCT ADDRESS COMMISSION.

## CLAUSE 61
REFERRING TO LINES 119 TO 122, WHERE THERE IS ANY FAILURE TO MAKE 'PUNCTUAL AND REGULAR PAYMENT' INCLUDING THE FIRST HIRE PAYMENT AND DELIVERY BUNKER COST, DUE TO WEEKENDS OR OMISSION OF CHARTERERS EMPLOYEES, BANKERS OR AGENTS OR OTHERWISE, FOR ANY REASON WHERE THERE IS ABSENCE OF INTENTION TO FAIL TO MAKE PAYMENT AS SET OUT, CHARTERERS SHALL BE GIVEN BY OWNERS 3 BANK WORKING DAYS NOTICE TO RECTIFY THE FAILURE AND WHERE SO RECTIFIED, THE PAYMENT SHALL STAND AS PUNCTUAL AND REGULAR PAYMENT.

## CLAUSE 62
THE VESSEL TO USE CHARTERERS' BILLS OF LADING OR BILLS OF LADING APPROVED BY CHARTERERS AND/OR SUB-CHARTERERS, WHICH TO INCLUDE NEW BOTH-TO-BLAME COLLISION CLAUSE, NEW JASON CLAUSE, CLAUSE PARAMOUNT, P AND I BUNKERING CLAUSE AND BALTIME 1939 WAR RISK CLAUSE DURING THE PERIOD OF THE CHARTER.

THE MASTER IS TO AUTHORIZE, IN WRITING, CHARTERERS OR THEIR APPOINTED AGENTS TO SIGN BILLS OF LADING ON BEHALF OF MASTER IN ACCORDANCE WITH MATE'S RECEIPTS.

IF THE BILLS OF LADING ARE NOT AVAILABLE AT THE DISCHARGE PORT OWNERS/MASTER TO RELEASE ENTIRE CARGO WITHOUT PRESENTATION OF ORIGINAL BILL(S) OF LADING AND CHARTERERS TO ISSUE SINGLE LETTER Of INDEMNITY (LOI)  IN OWNERS P&I CLUB FORMAT, SIGNED BY CHARTERERS AND FAXED TO OWNERS ALONG WITH A CLEAR AND LEGIBLE COPY OF THE CORRESPONDING SIGNED BILLS OF LADING FOR OWNER'S VERIFICATION.

## CLAUSE 63
OWNERS GUARANTEE THE VESSEL IS COVERED ON FULL TERMS AND FOR THE HULL AND MACHINERY VALUE OF USD 16 MILLION (INCLUDING INCREASED VALUE) FOR HULL INSURANCE DURING THE WHOLE PERIOD OF THIS CHARTER INCLUDING TOTAL OR CONSTRUCTIVE TOTAL LOSS AND THAT THE VESSEL ENTERED AND SHALL REMAIN FOR THE DURATION OF THE CHARTER IN P AND I CLUB: WEST OF ENGLAND. CHARTERERS TO HAVE THE BENEFIT OF OWNERS P AND I CLUB COVER AS FAR AS CLUB RULES PERMIT.

LIABILITIES FOR CARGO CLAIMS INCLUDING SHORT LOADING OF CARGO SHALL BE SETTLED IN ACCORDANCE WITH THE NEW YORK PRODUCE EXCHANGE INTERCLUB AGREEMENT 1996 (AS AMENDED).

ᴿ TO CHARTER PARTY
ᴱᴰ COPENHAGEN, 7ᵀᴴ DECEMBER, 2006
'BULK INTREPID" / LION SHIPHOLDINGS



**Lightship**
Chartering A/S

USE 64
ᴴIN THE CONTEXT OF THIS CHARTER PARTY, GOOD WEATHER CONDITIONS ARE
ᴱRSTOOD TO MEAN WINDS MAXIMUM BEAUFORT FORCE 4 (MAXIMUM 16 KNOTS) AND/OR
ᴵGLAS SEA STATE 3 (3-5 FEET). WEATHER REPORTS TO BE TAKEN FROM THE VESSEL'S
K LOG AND FROM THE REPORTS BY INDEPENDENT WEATHER ROUTING SERVICES SUCH AS
AN ROUTES. IN THE EVENT OF CONSISTANT DISCREPANCIES BETWEEN THE TWO SOURCES
N THE AVERAGE FIGURE BETWEEN INDEPENDENT WEATHER ROUTING SERVICE AND
SEL'S DECK LOG TO BE TAKEN AS RULING AND BINDING ON BOTH PARTIES.

USE 65
URING THE CURRENCY OF THIS CHARTER, THERE IS ANY DEVIATION OR ANY LOSS OF TIME
ᴬTSOVER CAUSED BY SICKNESS OF OR ACCIDENT TO CREW OR ANY PERSON ON BOARD
VESSEL (OTHER THAN SUPERCARGO TRAVELLING UNDER CHARTERERS' AUSPICES) OR
PERSON(S) UNDER THE CHARTERERS' ORDERS OR REPRESENTING THE CHARTERERS IN
WAY, HIRE SHALL NOT BE PAID FOR THE TIME SO LOST AND THE COST OF EXTRA BUNKER
SUMED AND ANY OTHER EXTRA EXPENSES INCURRED SHALL BE FOR THE OWNERS'
OUNT.

JSE 66
ᴴE EVENT OF VESSEL DEVIATING (WHICH EXPRESSION INCLUDES PUTTING BACK OR
ᵀING INTO ANY PORT OTHER THAN TO WHICH SHE IS BOUND UNDER THE INSTRUCTIONS OF
ᴿTERERS), FOR ANY CAUSE OR FOR ANY PURPOSE WHICH WOULD RESULT IN PAYMENT OF
. BEING SUSPENDED UNDER THE PROVISION OF THIS CHARTER, NO HIRE SHALL, IN ANY
ᴱ, BE PAYABLE AS FROM THE COMMENCEMENT OF DEVIATION UNTIL THE TIME WHEN
ᴈEL IS AGAIN READY AND IN EFFICIENT STATE TO RESUME HER SERVICE FROM
ᴵVALENT OR EQUIDISTANT POSITION AT WHICH THE DEVIATION COMMENCED. IN THE EVENT
ᴴE VESSEL, FOR ANY CAUSE OR FOR ANY PURPOSE AS AFORESAID, PUTS INTO ANY PORT
ᴱR THAN THE PORT FOR WHICH SHE IS BOUND UNDER THE INSTRUCTIONS OF THE
ᴿTERERS, THE PORT CHARGES, PILOTAGE AND OTHER EXPENSES AT SUCH PORT SHALL
ORNE BY THE OWNERS.

VESSEL SHALL HAVE THE LIBERTY TO DEVIATE FOR THE PURPOSE OF SAVING LIFE AND/OR
ᴾERTY AND TO ASSIST VESSELS IN DISTRESS. SUCH OPERATIONS NOT TO BE DEEMED A
ᴬTION BUT ALL SALVAGE CONTRIBUTION THUS PAY ABLE TO VESSEL TO BE EQUALLY
ᴰED WITH CHARTERERS AFTER PROPER DEDUCTION OF EXPENSES, IF ANY (INCLUDING
ᵀAIN AND CREW SHARE INCURRED IN THIS RESPECT).

JSE 67
ᴵE EVENT OF VESSEL BEING DENIED OR RESTRICTED IN THE USE OF PORT AND/OR
ᴰING AND/OR DISCHARGING FACILITIES OR SHORE LABOR AND/OR TUG OR PILOTAGE
ᴈTANCE BECAUSE OF THE VESSEL'S FLAG OR OWNERSHIP OR MANAGEMENT OR THE
ᴱS OF THE CONDITIONS OF EMPLOYMENT OF HER OFFICERS AND/OR CREW OR OF THE
ᴈERS AND/OR CREW OF ANY OTHER VESSEL UNDER THE SAME OWNERSHIP OR
ᴬGEMENT OR BECAUSE OF THE PREVIOUS TRADING OF THE VESSEL OR ANY OTHER
ᴈEL AS AFORESAID, HIRE SHALL CEASE FOR THE TIME THEREBY LOST.

ᴱ VESSEL REMAINS IDLE FOR 30 CONSECUTIVE DAYS BECAUSE OF ANY OF THE ABOVE
ᵀIONED CAUSES, CHARTERERS SHALL HAVE THE RIGHT TO CANCEL THE BALANCE OF THE
ᴿTER WITHOUT PREJUDICE TO ANY CLAIM THEY MAY OTHERWISE HAVE ON THE OWNERS,
ᵛIDED NO CARGO ON BOARD.



IDER TO CHARTER PARTY
ATED COPENHAGEN, 7TH DECEMBER, 2006
i/V "BULK INTREPID" / LION SHIPHOLDINGS

LAUSE 68
HOULD THE VESSEL BE ARRESTED DURING THE CURRENCY OF THIS CHARTER AT THE SUIT
)F ANY PERSON HAVING OR PURPORTING TO HAVE A CLAIM AGAINST OR ANY INTEREST IN THE
ESSEL, HIRE UNDER THIS CHARTER SHALL NOT BE PAYABLE IN RESPECT OF ANY PERIOD
/HILST THE VESSEL REMAINS UNDER ARREST AND IS NOT AT FULL DISPOSAL OF THE
HARTERERS OR REMAINS UNEMPLOYED AS THE RESULT OF SUCH ARREST AND THE OWNERS
HALL REIMBURSE TO THE CHARTERERS AND EXPENDITURES WHICH THEY MAY INCUR UNDER
HIS CHARTER IN RESPECT OF ANY PERIOD IS PAYABLE.

UCH REIMBURSEMENT IS HOWEVER, LIMITED TO DIRECT EXPENDITURE IN RESPECT OF THE
ESSEL NOT BEING AT THE CHARTERERS' DISPOSAL E.G. STANDBY TIME, WAREHOUSING, ETC.,
ND NOT FOR THE DIRECT CONSEQUENTIAL EXPENSE WHICH THE CHARTERERS MAY INCUR.
HIS CLAUSE SHALL NOT APPLY SHOULD THE ARREST BE CAUSED THROUGH ANY FAULT OF
HE PART OF THE CHARTERERS, THEIR SERVANTS OR AGENTS.

LAUSE 69
ASIC WAR RISK INSURANCE PREMIUMS AND CREW WAR BONUS TO BE FOR THE OWNERS '
CCOUNT, ANY ADDITIONAL PREMIUM/CREW WAR BONUS AND WAGES DUE TO CHARTERERS'
RADING OF THE VESSEL TO BE FOR CHARTERERS' ACCOUNT.  SUCH EXTRA INSURANCE
REMIUM AND BONUSES FOR CHARTERERS' ACCOUNT ARE TO BE SETTLED WITH THE FIRST
IRE PAYMENT DUE AFTER RECEIPT OF SUPPORT OF ORIGINAL VOUCHERS FROM OWNERS'
NDERWRITERS.

LAUSE 70
)WNERS TO APPOINT THEIR OWN AGENTS TO ATTEND ALL OWNERS' MATTERS SUCH AS
ELIVERY. REDELIVERY, GENERAL AVERAGE, HOSPITALIZATION, SUPPLY OF STORES AND
ROVISIONS ETC. OVER MINOR HUSBANDRY MATTERS SUCH AS HANDLING CREW MAIL,
EPATRIATIONS OF CREW, POSTAGE, PASSING TELEXES, PURCHASING CHARTS AND PASSING
ASH ADVANCES TO THE MASTER, CHARTERERS AGREE THAT THEIR AGENTS WILL HANDLE
AME FREE OF AGENCY FEES WITH OWNERS PAYING ACTUAL COST INVOLVED. CHARTERERS
O COOPERATE IN AGENCY NEGOTIATIONS SHOULD OWNERS ELECT TO USE CHARTERERS'
GENTS, BUT ALL BILLINGS TO BE DIRECT BETWEEN OWNERS AND AGENTS. SHOULD
HARTERERS PAY OWNERS' BILLINGS BY MISTAKE, SAME TO INCUR COMMISSION AND SHALL
E DEDUCTED FROM THE HIRE.

LAUSE 71
RADING EXCLUSIONS:
ESSEL TO ALWAYS TRADE VIA SAFE PORT(S)/BERTH(S)/ANCHORAGE(S), ALWAYS AFLOAT,
LWAYS WITHIN INSTITUTE WARRANTY LIMITS (IWL).

OTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CHARTER, THE CHARTERERS
/ARRANT THAT THE VESSEL SHALL NOT TRADE IN THE FOLLOWING PLACES:

NGOLA (INCLUDING CABINDA), ALGERIA, ALBANIA, ARABIAN GULF PERMITTED EXCLUDING
<AN, IRAQ, AND KUWAIT, ALL SIBERIAN AND USSR (CIS) PACIFIC COAST PORTS, CAMBODIA,
UBA, CROATIA, TURKISH-OCCUPIED CYPRUS, ETHIOPIA, ERITREA, GEORGIA (INCLUDING
BKHAZIA), HAITI, ISRAEL, LIBERIA, LIBYA (INCLUDING GULF OF SIDRA/SITRA), LEBANON,
IONTENEGRO AND ALL COUNTRIES THAT FORMERLY COMPRISED YUGOSLAVIA, NORTH
OREA, NAMIBIA, NICARAGUA, SRI LANKA, SOMALIA, SIERRA LEONE, SERBIA, SYRIA, SEA OF
ZOV, YEMEN, ZAIRE.

UWAIT, SYRIA, LEBANON OK PROVIDED SAME DOES NOT CONFLICT WITH U.S. LAWS
OVERNING TRADE WITH THESE COUNTRIES AND ANY/ALL EXTRA INSURANCE FOR TRADING

RIDER TO CHARTER PARTY
DATED COPENHAGEN, 7TH DECEMBER, 2006
M/V "BULK INTREPID" / LION SHIPHOLDINGS



TO THESE COUNTRIES INCLUDING TIME/EXPENSE FOR ARRANGING SAME TO BE FOR
CHARTERERS' ACCOUNT.

ALL WAR, WARLIKE, WAR DECLARED ZONES AND ANY COUNTRIES / AREAS PROHIBITED BY
GOVERNMENT OF VESSEL'S FLAG OR VESSEL'S UNDERWRITERS REQUIRE PAYMENT OF
ADDITIONAL PREMIUM AND / OR AREAS PRECLUDED BY VESSEL'S UNDERWRITERS AND / OR
BANNED/BOYCOTTED BY UNITED NATIONS.

THE CONWARTIME 1993 AND ANY SUBSEQUENT AMENDMENT IS DEEMED INCORPORATED IN
THIS CHARTER AND ALL BILLS OF LADING ISSUED HEREUNDER.)

CLAUSE 72
DELIVERY AND REDELIVERY TIMES TO BE ADJUSTED TO GREENWICH MEAN TIME (GMT) SEE
ALSO LINES 179-183.

CLAUSE 73
OWNERS WARRANT THAT THE VESSEL AND/OR OWNERS AND/OR ANY OTHER VESSELS UNDER
THE SAME OWNERSHIP AND/OR MANAGEMENT IS NOT BLACKLISTED BY THE ARAB COUNTRIES
NOR ANYWHERE ALSO WITHIN THE AGREED TRADING LIMITS.

CLAUSE 74
CHARTERERS SHALL FURNISH THE MASTER WITH ALL REQUISITE INSTRUCTIONS AND SAILING
INSTRUCTIONS, IN WRITING OR BY TELEGRAM AND THE MASTER SHALL KEEP A FULL AND
CORRECT LOG ABSTRACT OF THE VOYAGE OR VOYAGES, SHOWING INTERALIA, THE COURSE
OF THE VESSEL AND DISTANCE RUN AND THE CONSUMPTION OF FUEL OIL, WHICH IS TO BE
PATENT TO CHARTERERS OR THEIR AGENTS, A TRUE COPY OF WHICH IS TO BE SENT TO
CHARTERERS FROM EACH PORT OF CALL ON THE VOYAGE AND IMMEDIATELY AFTER
COMPLETION OF THE VOYAGE, TOGETHER WITH ANY OTHER INFORMATION WHICH THE MASTER
DEEMS NECESSARY.

CLAUSE 75
THE FOLLOWING SERVICES IN RESPECT OF LOADING AND DISCHARGING OPERATIONS FROM
OFFICERS AND CREW ARE INCLUDED IN THE HIRE, SUBJECT TO UNION REGULATIONS,
WEATHER AND LOCAL REGULATIONS PERMITTING:

RAISING AND LOWERING OF DERRICKS AND/OR GANGWAYS IN PREPARATION FOR THE
LOADING AND DISCHARGING.
OPENING AND CLOSING OF HATCHES IN PREPARATION FOR AND DURING LOADING AND
DISCHARGE.
SHIFTING VESSEL DURING LOADING AND DISCHARGING AND SHIFTING BERTH, WARPING,
DOCKING AND UNDOCKING.
BUNKERING.
OFFICERS AND CREW TO SHAPE UP VESSEL'S HATCHES PRIOR TO ARRIVAL AT LOADING
AND/OR DISCHARGING PLACES SO AS TO IMMEDIATELY COMMENCE LOADING/DISCHARGING
OPERATIONS.
THE CREW IS TO ASSIST IN REMOVAL OF THE LASHING/SECURING MATERIALS, DUNNAGE
AND/OR DEBRIS FROM CARGO HOLDS AND DECK.
THE CREW TO CHECK LASHING/SECURING AT SEA AND CORRECT ANY PROBLEMS THEREWITH
AS NECESSARY.
REMOVING AND REPLACING BEAMS IN PREPARATION FOR LOADING AND DISCHARGING.
SUPERVISION OF LOADING AND DISCHARGING OPERATIONS.
ALL OVERTIME OF THE OFFICERS AND CREW.

RIDER TO CHARTER PARTY
DATED COPENHAGEN, 7TH DECEMBER, 2006
M/V "BULK INTREPID" / LION SHIPHOLDINGS


Lightship
Chartering A/S
CVR no.10

ABOVE SERVICES SHALL BE CONSIDERED AS MINIMUM AND SHALL IN NO WAY BE CONSTRUED AS AN ALTERNATIVE TO OR REDUCTION IN THE STANDARD OF SERVICES FROM OFFICERS AND CREW REQUIRED UNDERE THIS CHARTER PARTY.

CLAUSE 76
CHARTERERS MAY SUPPLY OCEAN ROUTES  or similar international recognized agents' ADVICE TO THE MASTER DURING VOYAGES SPECIFIED BY THE CHARTERERS.  THE MASTER TO COMPLY WITH THE REPORTING PROCEDURE OF THE ROUTING SERVICE SELECTED BY THE CHARTERERS.  IN THE EVENT OF CONTINUOUS DISCREPANCIES BETWEEN MASTER'S LOG AND ROUTING SERVICES' FIGURES, THEN THE AVERAGE FIGURE BETWEEN THE TWO TO BE FINAL AND BINDING ON BOTH PARTIES.

CLAUSE 77
CHARTERERS HAVE THE RIGHT TO DESPATCH A REPRESENTATIVE/SUPERCARGO TO SHIP'S LAST PORT OF CALL PRIOR TO DELIVERY UNDER THIS CHARTER FOR SUPERFICIAL INSPECTION AND TO INFORM MASTER OF UPCOMING EMPLOYMENT.  OWNERS AGREE TO ACCOMMODATE CHARTERERS'  REPRESENTATIVE OF SAME TO SIGN OWNERS' INDEMNITY FOR ONBOARD.

CLAUSE 78
CHARTERERS SHALL HAVE THE OPTION TO WATER TEST HATCHES AS WELL AS PRESSURE TEST BALLAST TANKS AS AND WHEN REQUIRED, AS MEANS OF ESTABLISHING VESSEL'S READINESS TO LOAD CHARTERERS' INTENDED CARGO. ANY SUCH TEST IS TO BE FOR THE CHARTERERS' TIME AND EXPENSE.

CLAUSE 79
PROVISIONS MADE UNDER CLAUSE 9 NOT TO AFFECT CHARTERERS' RIGHT TO ADVANCE ANY CLAIM OR REQUIRE ARBITRATION UNDER CLAUSE 17 OF ANY DISPUTE REGARDING THE CONDUCT OF THE MASTER IN THE PROSECUTION OF HIS VOYAGES AND IN CARRYING OUT THE ORDERS AND DIRECTIONS OF THE CHARTERERS.

CLAUSE 80
THIS CHARTER PARTY IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH ENGLISH LAW. SHOULD ANY DISPUTE ARISE BETWEEN OWNERS AND THE CHARTERERS, THE MATTER IN DISPUTE SHALL BE REFERRED TO 3 PERSONS IN LONDON, ONE TO BE APPOINTED BY EACH OF THE PARTIES HERETO AND THE THIRD BY THE TWO SO CHOSEN. THEIR DECISION OR THAT OF ANY TWO OF THEM SHALL BE FINAL AND FOR THE PURPOSE OF ENFORCING ANY AWARD, THIS AGREEMENT MAY BE MADE A RULE OF THE COURT. THE ARBITRATORS SHALL BE COMMERCIAL MEN CONVERSANT WITH SHIPPING MATTERS. IF EITHER OF THE APPOINTED ARBITRATORS REFUSES TO ACT OR IS INCAPABLE OF ACTING OR DIES, THE PARTY WHO APPOINTED HIM MAY APPOINT A NEW ARBITRATOR IN HIS PLACE. IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER BY WAY OF SUBSTITUTION AS AFORESAID OR ORIGINALLY WITH 7 CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR AND HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE AN APPOINTMENT, THE PARTY WHO HAS APPOINTED AN ARBITRATOR IS ALLOWED TO APPOINT THAT ARBITRATOR TO ACT AS SOLE ONE, AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CHARTER PARTY, THE PARTIES AGREE THAT ALL ARBITRATIONS WHERE THE AMOUNT IN ISSUE IN THE DISPUTE(S) IS LESS THAN U.S.$ 50,000.00 SHALL BE CONDUCTED ACCORDING TO THE SMALL CLAIMS PROCEDURE 1989 (S.C.P.) OF THE LONDON MARITIME ARBITRATORS ASSOCIATION (AS AMENDED FROM TIME TO TIME).

RIDER TO CHARTER PARTY
DATED COPENHAGEN, 7TH DECEMBER, 2006
M/V "BULK INTREPID" / LION SHIPHOLDINGS



**Lightship**
Chartering A/S

IF AFTER COMMENCEMENT OF SUCH REFERENCE IT APPEARS ON REASONABLE GROUNDS, THAT THE SUMS IN ISSUE, IN ANY DISPUTE OR DISPUTES EXCEED U.S.$ 50,000.00, EITHER PARTY SHALL BE ENTITLED TO REQUIRE IN WRITING THAT THE REFERENCED HENCEFORTH SHOULD PROCEED WITHOUT REGARD TO THE S.C.P. PROVIDED THAT THERE IS N0 PRIOR AGREEMENT (WHETHER IN THIS CHARTER PARTY OR NOT) TO REFER DISPUTE(S) TO A SOLE ARBITRATOR, EACH PARTY THEREUPON SHALL HAVE 7 DAYS TO APPOINT ITS ARBITRATOR UNDER THE ARBITRATION PROVISIONS SET OUT ELSEWHERE IN THIS CHARTER PARTY WITH S.C.P. ARBITRATOR SITTING AS UMPIRE OR THIRD ARBITRATOR.

CLAUSE 81
DELETED.

CLAUSE 82
DELETED.

CLAUSE 83
THIS FIXTURE TO BE KEPT ABSOLUTELY PRIVATE AND CONFIDENTIAL AND NOT TO BE REPORTED BY ANY OF THE PARTIES INVOLVED.

CLAUSE 84
ALL TAXES AND DUES ON VESSEL AND/OR CARGO AND/OR FREIGHT ARISING OUT OF CARGOES CARRIED OR PORTS VISITED UNDER THIS CHARTER PARTY SHALL BE FOR CHARTERERS' ACCOUNT.

CLAUSE 85
CHARTERERS ARE NOT TO ISSUE OR CAUSE TO BE ISSUED BILLS OF LADINGS WHICH ARE SUBJECT TO HAMBURG RULES.

CLAUSE 86
BULK CARRIER SAFETY CLAUSE:
A) THE CHARTERERS SHALL INSTRUCT THE TERMINAL OPERATORS OR THEIR REPRESENTATIVES TO COOPERATE WITH THE MASTER IN COMPLETING THE IMO SHIP/SHORE SAFETY CHECKLIST AND SHALL ARRANGE ALL CARGO OPERATIONS STRICTLY IN ACCORDANCE WITH THE GUIDELINES SET OUT THEREIN.

B) IN ADDITION TO THE ABOVE AND NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY IN RESPECT OF LOADING/DISCHARGING RATES, THE CHARTERERS SHALL INSTRUCT THE TERMINAL OPERATORS TO LOAD/DISCHARGE THE VESSEL IN ACCORDANCE WITH THE LOADING/DISCHARGING PLAN, WHICH SHALL BE APPROVED BY THE MASTER WITH DUE REGARD TO THE VESSEL'S DRAUGHT, TRIM, STABILITY, STRESS OR ANY OTHER FACTOR WHICH MAY AFFECT THE SAFETY OF THE VESSEL.

C) AT ANY TIME DURING OPERATIONS THE MASTER MAY, IF HE DEEMS IT NECESSARY FOR REASONS OF SAFETY Of THE VESSEL. INSTRUCT THE TERMINAL OPERATORS OR THEIR REPRESENTATIVES TO SLOW DOWN OR STOP THE LOADING OR DISCHARGING.

D) COMPLIANCE WITH THE PROVISIONS OF THIS CLAUSE SHALL NOT AFFECT THE COUNTING OF TIME.

CLAUSE 87
INTERMEDIATE HOLD CLEANING:
Deleted. N/A.

CHARTER PARTY
)PENHAGEN, 7TH DECEMBER, 2006
INTREPID" / LION SHIPHOLDINGS



38
)F LOADING/DISCHARGING STEEL PRODUCTS, OWNERS TO APPOINT A P AND I CLUB
)R TO PERFORM A PRELOADING/PREDISCHARGE SURVEY TO ASCERTAIN THE
)N OF THE CARGO PRIOR TO AND DURING LOADING/DISCHARGING. COST FOR SUCH
TO BE SPLIT EQUALLY BETWEEN OWNERS AND CHARTERERS.

39
TANDARD ISM CLAUSE FOR VOYAGE AND TIME CHARTER PARTIES
E DATE OF COMING INTO FORCE OF THE INTERNATIONAL SAFETY MANAGEMENT (ISM)
RELATION TO THE VESSEL AND THEREAFTER DURING THE CURRENCY OF THIS
PARTY, THE OWNER SHALL PROCURE THAT BOTH THE VESSEL AND 'THE COMPANY'
JED BY THE ISM CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISM CODE.
QUEST, THE OWNER SHALL PROVIDE A COPY OF THE RELEVANT DOCUMENT OF
NCE (DOC) AND SAFETY MANAGEMENT CERTIFICATE (SMC) TO THE CHARTERERS.

\S OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE, EXPENSE OR
USED BY FAILURE ON THE PART OF THE OWNERS OR 'THE COMPANY' TO COMPLY
ISM CODE SHALL BE FOR THE OWNERS' ACCOUNT.

)0
3ANKING/LIGHTERAGE CLAUSE
HARTERERS SHALL HAVE THE RIGHT, WHERE AND WHEN IT IS CUSTOMARY AND SAFE
3ELS OF SIMILAR SIZE AND TYPE TO DO SO, TO ORDER THE VESSEL TO GO, LIE OR
LONGSIDE ANOTHER VESSEL OR VESSELS OF ANY SIZE OR DESCRIPTION
EVER OR TO ORDER SUCH VESSELS TO COME AND REMAIN ALONGSIDE AT SUCH SAFE
HARF, ANCHORAGE OR OTHER PLACE FOR TRANSHIPMENT, LOADING OR
3ING OF CARGO AND/OR BUNKERING.

HARTERERS SHALL PAY FOR AND PROVIDE SUCH ASSISTANCE AND EQUIPMENT AS
EQUIRED TO ENABLE ANY OF THE OPERATIONS MENTIONED IN THIS CLAUSE SAFELY
MPLETED AND SHALL GIVE THE OWNERS SUCH ADVANCE NOTICE AS THEY
BLY CAN OF THE DETAILS OF ANY SUCH OPERATIONS. NUMBER, TYPE AND
ING OF FENDERS ALWAYS TO BE AT MASTER'S SATISFACTION.

UT PREJUDICE TO THE GENERALITY OF THE CHARTERERS' RIGHTS UNDER (A) AND
XPRESSLY AGREED THAT THE MASTER SHALL HAVE THE RIGHT TO REFUSE TO
IE VESSEL TO PERFORM AS PROVIDED IN (A) AND (B) IF IN HIS REASONABLE OPINION
3AFE SO TO DO. MASTER MAY MOVE VESSEL AWAY OR ORDER THE OTHER VESSEL
ANY TIME IF HE CONSIDERS CONDITIONS UNSUITABLE.

/NERS SHALL BE ENTITLED TO INSURE ANY DEDUCTIBLE UNDER THE VESSEL'S HULL
JD THE CHARTERERS SHALL REIMBURSE THE OWNERS ANY ADDITIONAL PREMIUM(S)
) BY THE VESSEL'S UNDERWRITERS AND/OR THE COST OF INSURING ANY
LE UNDER THE VESSEL'S HULL POLICY.

HARTERERS SHALL FURTHER INDEMNIFY THE OWNERS FOR ANY COSTS, DAMAGE
_ITIES RESULTING FROM SUCH OPERATION. THE VESSEL SHALL REMAIN ON HIRE FOR
LOST INCLUDING PERIODS FOR REPAIRS AS A RESULT OF SUCH OPERATION.

1
JAABSA CLAUSE
T SUCH PLACES IN GRAIN LOADING AREAS IN RIVER PLATE, ARGENTINA  WHERE IT IS
RY FOR SIMILAR SIZE VESSELS TO SAFELY LIE AGROUND, AND WHERE THE VESSELS

RIDER TO CHARTER PARTY
DATED COPENHAGEN, 7TH DECEMBER, 2006
M/V "BULK INTREPID" / LION SHIPHOLDINGS



RESTS ON SOFT MUD AND VESSEL IS NOT TO BE ASKED TO MANEUVER WHILST AGROUND.
SHOULD VESSEL TOUCH BOTTOM, THE CHARTERERS TO ARRANGE AT THEIR TIME AND
EXPENSE AN UNDERWATER SURVEY TO ASSESS THE CONDITION OF HULL PRIOR TO RE-
DELIVERY. CHARTERERS INDEMNIFY OWNERS AGAINST ALL DAMAGES, LOSSES AND
CONSEQUENTIAL LOSSES ARISING FROM DAMAGE TO HULL BY VESSEL TOUCHING BOTTOM
DURING LOADING/DISCHARGING. NAABSA ALLOWED ONLY ONCE DURING THIS CHARTER
PARTY.

CLAUSE 92
HATCHES TO BE SEALED AFTER LOADING AND UNSEALED BEFORE UNLOADING IN PRESENCE
OF CHARTERER'S REPRESENTATIVE(S) AT CHARTERER'S COST AND TIME AND OWNERS WILL
NOT BE RESPONSIBLE FOR ANY SHORT LANDING.

CLAUSE 93
DELETED.

CLAUSE 94
BOTTOM CLEANING CLAUSE
Deleted.

CLAUSE 95
SALE CLAUSE
Deleted.

CLAUSE 96
REDELIVERY
ON DROPPING LAST OUTWARD SEA PILOT ONE SAFE PORT Spain, intention Valencia,  PORT IN
CHARTERERS' OPTION, ANY TIME DAY OR NIGHT SUNDAYS AND HOLIDAYS INCLUDED.

CLAUSE 97
VESSEL IS ITF FITTED.

CLAUSE 98
VESSEL TO BE ALWAYS LEFT IN SEAWORTHY TRIM TO MASTER'S SATISFACTION DURING
SIALING AND/OR SHIFTING BETWEEN ALL BERTHS/PORTS.

CLAUSE 99 – DRYDOCK CLAUSE
No dry docking, except in case of emergency.

CLAUSE 100 - CANAL TRANSIT
DURING THE FULL CURRENCY OF THIS CHARTER PARTY,  OWNERS SHALL KEEP THE VESSEL
FULLY CAPABLE AND EQUIPPED TO TRANSIT THE SUEZ AND PANAMA CANALS WITHOUT DELAY
IN ACCORDANCE WITH THE RULES AND REGULATIONS GOVERNING NAVIGATION OF THE
CANALS MENTIONED ABOVE.

CLAUSE 101 - FLAG RESTRICTIONS
OWNERS SHALL BE RESPONSIBLE IN THE EVENT OF LOST TIME, DELAY,  AND/OR IMPOSSIBILITY
OF OR RESTRICTIONS ON THE FULL WORKING OR EMPLOYMENT OF THE SHIP, INCLUDING BUT
NOT LIMITED TO ANY ACTION WHATSOEVER TAKEN BY ANY THIRD PARTIES,  AS A RESULT OF
OR IN CONNECTION WITH THE COUNTRY OF REGISTRATION OF THE SHIP, HER FLAG, AND/OR
THE TERMS AND CONDITIONS UPON WHICH THE CREW OF THE SHIP ARE ENGAGED OR
EMPLOYED BY OWNERS.  THE SHIP SHALL BE OFF HIRE FOR ANY TIME LOST AND ANY AND ALL
DIRECTLY RELATED EXPENSES INCURRED BY CHARTERERS AS A RESULT MAY BE DEDUCTED

RIDER TO CHARTER PARTY
DATED COPENHAGEN, 7TH DECEMBER, 2006
M/V "BULK INTREPID" / LION SHIPHOLDINGS



FROM HIRE.  IN THE NORMAL COURSE OF TRADING THE VESSEL, IF CHARTERERS INCUR ADDITIONAL PORT EXPENSES AS A RESULT OF VESSEL'S FLAG, SAME IS TO BE FOR CHARTERERS ACCOUNT.

CLAUSE 102 - QUARANTINE
OWNERS SHALL BE LIABLE FOR ANY DELAY IN QUARANTINE ARISING FROM THE MASTER, OFFICERS, OR CREW HAVING COMMUNICATION WITH THE SHORE AT ANY INFECTED AREA WITHOUT THE WRITTEN CONSENT OF CHARTERERS OR THEIR AGENTS,  ALSO FOR ANY LOSS OF TIME THROUGH DETENTION BY CUSTOMS OR OTHER AUTHORITIES CAUSED BY SMUGGLING OR OTHER INFRACTIONS OF LOCAL LAW ON THE PART OF THE MASTER, OFFICERS OR CREW. ANY TIME LOST BY SUCH CAUSES MAY BE DEDUCTED AS OFF-HIRE.

CLAUSE 103 - SAFETY AND HEALTH REGULATIONS
OWNERS WARRANT THAT THE VESSEL SHALL BE IN POSSESSION OF THE NECESSARY CERTIFICATES TO COMPLY WITH ALL SAFETY AND HEALTH REGULATIONS AND ALL CURRENT REQUIREMENTS AT ALL PORTS OF CALL DURING THE CURRENCY OF THIS CHARTER,  WITHOUT HINDRANCE OR DELAY.

CLAUSE 104 - AUSTRALIAN REGULATIONS
VESSEL WILL COMPLY WITH AND BE MAINTAINED IN ACCORDANCE WITH THE REQUIREMENTS OF THE COMMONWEALTH OF AUSTRALIA LOADING AND UNLOADING SAFETY MEASURE REGULATIONS.  OWNERS CONFIRM THAT THE VESSEL IS FITTED, AND WILL BE FITTED THROUGHOUT THE DURATION OF THIS CHARTER WITH HOLD LADDERS THAT CONFORM TO THE REGULATIONS OF THE WATERSIDE WORKERS FEDERATION OF AUSTRALIA.

CLAUSE 105 - FINANCIAL RESPONSIBILITY IN RESPECT OF POLLUTION
THE OWNERS WARRANT THAT THROUGHOUT THE CURRENCY OF THIS CHARTER, THEY WILL PROVIDE THE VESSEL WITH FOLLOWING CERTIFICATES:
A CERTIFICATE ISSUED PURSUANT TO SECTION 311 (P) OF THE CLEAN WATER ACT (ALSO KNOWN AS THE U.S.FEDERAL WATER POLLUTION CONTROL ACT),  AS AMENDED (TITLE 33 U.S.CODE,SECTION 1321 (P)) OR ANY OTHER CERTIFICATES WHICH MAY BE REQUIRED BY UNITED STATES FEDERAL OR STATE LEGISLATION ENACTED AT ANY TIME DURING THE CURRENCY OF THIS CHARTER.

IN NO CASE SHALL CHARTERERS BE LIABLE FOR ANY DAMAGES RESULTING FROM OWNERS FAILURE TO OBTAIN OR HAVE ON BOARD SUCH CERTIFICATES OR OWNERS FAILURE TO COMPLY IN ANY OTHER WAY WITH EXISTING OR FUTURE LAWS ENACTED BY ANY NATIONAL OR LOCAL GOVERNMENTS.  ANY TIME LOST BY REASON OF OWNERS NON COMPLIANCE SHALL BE OFF HIRE AND OWNERS SHALL HOLD CHARTERERS HARMLESS AGAINST ANY AND ALL CONSEQUENTIAL LOSS, DAMAGE, EXPENSE OR CLAIMS.

CLAUSE 106 -.POLLUTION
OWNERS WARRANT THAT THE VESSEL IS ENTERED WITH THE PROTECTION AND INDEMNITY INSURER (NAME) FOR THE FULL COVERAGE AVAILABLE IN P AND I DIRECT COVERAGE FOR MARINE POLLUTIONS RISKS.

WHEN AN ESCAPE OR DISCHARGE OF OIL OR OTHER HAZARDOUS SUBSTANCES OCCURS FROM THE VESSEL AND CAUSES OR THREATENS TO CAUSE POLLUTION DAMAGE, OR WHEN THERE IS THE THREAT OF AN ESCAPE OR DISCHARGE OF OIL OR OTHER HAZARDOUS SUBSTANCES (IE. A GRAVE AND IMMINENT DANGER OF THE ESCAPE OR DISCHARGE WHICH, IF IT OCCURRED, WOULD CREATE A SERIOUS DANGER OF POLLUTION DAMAGE), THEN OWNERS SHALL IMMEDIATELY UNDERTAKE SUCH MEASURES AS ARE REASONABLY NECESSARY TO PREVENT OR MINIMIZE SUCH DAMAGE OR TO REMOVE THE THREAT.

CHARTER PARTY
PENHAGEN, 7TH DECEMBER, 2006
INTREPID" / LION SHIPHOLDINGS



Lightship
Chartering A/S

SHALL KEEP CHARTERERS ADVISED OF THE NATURE OF ANY MEASURES TAKEN BY
D, IF TIME PERMITS, THE NATURE OF THE MEASURES INTENDED TO BE TAKEN BY
THE EVENT OWNERS FAIL TO UNDERTAKE SUCH MEASURES, CHARTERERS MAY, AT
TION, UPON NOTICE OWNERS TO OWNERS OR THE MASTER, DO SO THEMSELVES AND
SURES TAKEN BY CHARTERERS SHALL BE DEEMED TAKEN ON OWNER'S AUTHORITY
WNER'S AGENT AND SHALL BE AT OWNER'S EXPENSE EXCEPT TO THE EXTENT THAT
H POLLUTION DAMAGE OR THREAT WAS CAUSED OR CONTRIBUTED TO BY
ERS.

**07 - BOTTOM FOULING**

**08 – GUARANTY**
A for this trip.

# EX. B



# Phoenix Bulk Carriers (US)
88 Valley Road • Middletown, RI 02842
Tel: (401) 846-7790 • Fax: (401) 846-1520

*LION SHIPHOLDINGS LIBERIA*
c/o Lightship Chartering A/S
4, Smakkedalen
Gentofte DK-2820

Attn.: Charlotte Friis / Dahbaa

| | | | | | |
|---|---|---|---|---|---|
| DATE: | 2-Apr-2007 | | | STATEMENT NO  -  | 2007-HS-00265 |
| VESSEL: | *M/V "BULK INTREPID"  Voy 19* | | | | |
| C/P DATE: | 7-Dec-2006 | | | | |
| T/C PERIOD: | ONE T/C TRIP N CHINA  TO SPAIN DURATION ABOUT 40 / 50 DAYS WOG | | | | |
| HIRE: | PROVISIONAL FINAL HIRE STATEMENT NO. 3 | | | | |

| | | | |
|---|---|---|---|
| PERIOD: | DELIVERY: DLOSP YINGKOU (+8): | 12/25/06 22:24 GMT | |
| | REDELIVERED DLOSP VALENCIA (+1): | 2/11/07 20:12 GMT | |

| | | | | | |
|---|---|---|---|---|---|
| HIRE RATE: | $31,000  PER DAY | 47.90833 Days | | US | $1,485,158.33 |
| ADDL HIRE- CLEANING AT VITORIA BRAZIL: | | 2.35417 Days | | US | $72,979.27 |
| NET HIRE: | | 50.30416 Days | | US | $1,558,137.60 |

| | | | | | |
|---|---|---|---|---|---|
| COMMISSIONS: | | | | | |
| ADDRESS | | 3.75% | US | $55,693.44 | |

BUNKERS REMAINING ON BOARD AT TIME OF DELIVERY ACCORDING TO MASTER:

| | | | | | |
|---|---|---|---|---|---|
| IFO: | 522.300 Mts | $280.00 | | US | $146,244.00 |
| MDO: | 94.100 Mts | $560.00 | | US | $52,696.00 |

BUNKERS REMAINING O/BOARD AT TIME OF RE-DELIVERY ACCORDING TO MASTER:

| | | | | | |
|---|---|---|---|---|---|
| IFO: | 532.700 Mts | $280.00 | US | $149,156.00 | |
| MDO: | 94.400 Mts | $560.00 | US | $52,864.00 | |

| | | | | |
|---|---|---|---|---|
| ILOHC ON REDELIVERY: | | | US | $6,000.00 |
| REPRESENTATION/COMMUNICATION/VICTUALLING PRORATA @ | $1,500.00 /MOS | | US | $2,362.60 |

ACTUAL/ ESTIMATED EXPENSES FOR CHARTERERS ACCOUNT:

| | | | |
|---|---|---|---|
| CHINESE TONNAGE DUES CERT RMB 96227.10 @ 50% ROE 7.80 PER DEC 22 AGREEMENT: | | US | $6,168.40 |
| BUNKER CONSUMPTION DURING CLEANING OPERATIONS AT BRAZIL: | | US | $4,368.00 |
| AQUAPORT CLEANING EXP. BRAZIL PER INVOICE (3 HLDS @ USD 7000 PER HLD): | | US | $21,000.00 |
| COMPENSATION FOR VSLS CREW FOR EXCESSIVE CARGO RESIDUE CLEANING: | | US | $10,000.00 |

ACTUAL/ ESTIMATED EXPENSES FOR OWNERS' ACCOUNT:

LESS PAYMENTS RECEIVED ON:

| | | | |
|---|---|---|---|
| | 12/27/2006 | US | $653,375.35 |
| | 1/10/2007 | US | $442,169.10 |
| | 1/25/2007 | US | $285,280.55 |
| | 2/7/2007 | US | $59,218.70 |

| | | | | |
|---|---|---|---|---|
| SUBTOTALS: | | US | $1,697,757.14 | US | $1,806,976.61 |
| *BALANCE DUE OWNERS:* | | US | *$109,219.47* | |
| *TOTALS:* | | US | $1,698,629.34 | US | $1,698,629.34 |
| *DATE DUE:* | 4-Apr-2007 | | E. & O. E. | |

Phoenix Bulk Carriers (US) Corp.
(as agents only)

*HIRE PAYABLE VIA TELEGRAPHIC TRANSFER TO:*
HSBC Bank USA , 452 Fifth Avenue, New York, NY 10018
Fed ABA: 021001088 /CHIPS ABA: 0108 / S.W.I.F.T. CODE: MRMDUS33
*For further Credit to:* The Bank of Bermuda Ltd., Hamilton, Bermuda
CHIPS UID: 005584 / S.W.I.F.T. CODE: BBDA BMHM
Account: ALLSEAS LOGISTICS , ACCT NO.: 010-097574-501
*Ref: M/V "BULK INTREPID"  Voy 19,  C/P dtd December 7, 2006 - Provisional Final Hire Statement No. 03, Inv. No. 2007-HS-00265*